PER CURIAM.
Bonnie Rosen, the plaintiff below in a declaratory judgment action, appeals from the trial court’s order granting appellee’s motion for summary judgment. We affirm.
Mrs. Rosen had sued a Dade County law firm (known by the pseudonym of “the AB Law Firm”), its principal and one employee for breach of contract, fraud, breach of fiduciary duty, negligent supervision, conversion and intentional infliction of emotional distress. The dispute arose out of representation of appellant on several matters; she alleged that the firm grossly overcharged her by double-billing and churning, that it would not surrender files to new counsel and that one member of the firm threatened to reveal confidences to a party opponent.
The firm had a $1,000,000 liability insurance policy with Manatee Insurance Co., (the policy was originally issued by Rum-ger Insurance Co.) and the insurer initially provided the firm with legal representation. The policy had a “declining balance” *492 feature, meaning that defense costs reduced the amount of money available to pay damages.
Manatee was declared insolvent during the litigation, and the Florida Insurance Guaranty Association (FIGA), assumed the defense as receiver. FIGA took the position that its $300,000 per claim liability (established in section 631.57(l)(a)2., Florida Statutes) applied to the Rumger-Mana-tee policy’s declining balance provision, meaning that only $300,000 was available for both indemnification and costs.
As the matter neared trial, all but $39,-000 of the $300,000 coverage limit had been spent in costs by FIGA. Shortly after being notified of this fact, the parties settled the case on the following terms: TUB Law Firm would consent to a judgment of $261,000 against it, but the judgment would never be recorded, would create no liens and could not be executed. Instead, appellant would accept $39,000 from FIGA, would attempt to collect the balance of the $300,000 from FIGA, and upon conclusion of that litigation would release the law firm or file a notice of satisfaction of judgment. It appears that other than to agree to pay the remaining $39,000, FIGA in no way participated in the negotiations.
Mrs. Rosen then filed this suit in Duval County, seeking a determination that appellee was not entitled to deduct the $261,000 paid out in defense costs from the per-claim limit, and an order requiring appellee to pay her $261,000 in satisfaction of the judgment against the law firm. The core of appellant’s claim was that the declining balance should be computed from the $1 million limits of the Rumger-Mana-tee policy, and not from the $300,000 statutory limit for claims.
Both sides moved for summary judgment. The trial court granted FIGA’s motion, reasoning that because appellant had agreed to release the AB Law Firm at the conclusion of the litigation with FIGA, it had extinguished any liability that FIGA had as an insurer. Thus, the trial court ruled, by agreeing to release the law firm, appellant thereby released the insurer.
We believe this reasoning to be correct in light of two cases that present similar factual scenarios.
In Kelly v. Williams, 411 So.2d 902 (Fla. 5th DCA 1982), the insurer offered policy limits to the plaintiff, who thereupon released the tortfeasor with the intention of pursuing a bad-faith claim against the insurer. The release of the tortfeasor, however, relieved the insurer of any legal obligation to pay damages, as the trial court ruled and the appellate court affirmed.
Kelly was cited in support of the holding in Fidelity & Cas. Co. v. Cope, 462 So.2d 459 (Fla.1985), which held that a release to the insured eliminates the obligation of the insurer to pay damages, absent an assignment of claim.
The order below is affirmed.
ERVIN, MINER and KAHN, JJ„ CONCUR.