566 F.2d 475
 Miles L. HENSLEE, Sr., Plaintiff-Appellant,
v.
D. Collier HOUSTON and Dorothy S. Houston, Defendants-Appellees.
Miles L. HENSLEE, Sr., Plaintiff-Appellant,
v.
FIRST STATE BANK AND TRUST COMPANY and Norman R. Couch,
Defendants-Appellees.
Miles L. HENSLEE, Sr., Plaintiff-Appellant,
v.
Kenneth B. HODGES, Jr., Defendant-Appellee.
 Nos. 75-4413 and 76-1213.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 17, 1978.
 
 Charles A. Gower, Columbus, Ga., for plaintiff-appellant.
 Sam B. Lippitt, Albany, Ga., for 1st State Bk., Etc.
 Jesse W. Walters, Albany, Ga., for D. C. Houston, et al.
 Frank S. Twitty, Camilla, Ga., for D. C. Houston, et al. and for defendants-appellees.
 Burt, Burt & Rentz, H. P. Burt, Albany, Ga., for plaintiffs-appellees.
 Appeals from the United States District Court for the Middle District of Georgia.
 Before TUTTLE, MORGAN and HILL, Circuit Judges.
 HILL, Circuit Judge:
 
 
 1
 Plaintiff-appellant Miles L. Henslee, Sr. appeals from summary judgments granted in favor of defendants-appellees, First State Bank and Trust Company, Norman R. Couch, D. Collier Houston, Dorothy S. Houston, Kenneth B. Hodges, Jr. and James O. Blair in this diversity action alleging fraud and breach of contract.
 
 
 2
 In this appeal, we review the activities of plaintiff-appellant, his former business associates, and the Bank which was used by them during their business activities. Plaintiff, Miles L. Henslee, was a knowing participant in many of the transactions about which he complains in this action brought against the others. When their business venture, the construction of an apartment project, fell upon hard times, Henslee first sought to acquire all the assets and complete construction for his own account and anticipated profit. When those expectations failed to materialize, Henslee sued the others alleging fraud and breach of contract. He asserted, generally, that had the Bank and its agent properly safeguarded the Bank's interests, Henslee's losses might, incidentally, have been prevented, even though some actions taken by the venturers contrary to the Bank's interests included acts of Henslee, himself. He asserted that his partners and the architect as well had defrauded him in numerous ways.
 
 
 3
 In the course of plaintiff's maneuvering, prior to the institution of this action, he had entered into transactions designed to release at least one of the alleged wrongdoers, K. B. Hodges. Summary judgments were entered in favor of defendants-appellees, and Henslee appeals. We affirm.
 
 
 4
 The principal question we are called upon to decide is whether or not the trial court properly construed the effect of a release agreement, entered into by the plaintiff and defendant K. B. Hodges, as it pertains to the other defendants, who are not parties to the release and alleged to be joint tortfeasors. Another issue presented is whether or not the trial court erred in ruling that plaintiff, by breaching the contract that he and his partners entered into with the Bank, was barred from asserting that the Bank had breached its contract with the partnership.
 
 
 5
 We briefly review the facts necessary for decision of the controversy.
 
 
 6
 In 1972, plaintiff and three other persons, Ross Malone, Jr., and defendants Hodges and Blair, formed a partnership for the sole purpose of building and owning an apartment complex in Brunswick, Georgia known as the Frederica Apartments. Malone, Hodges and Blair were, also, officers and stockholders of Malone Construction Company, Inc., a general contractor.
 
 
 7
 In order to construct the apartments, it was agreed between the partners that Malone Construction Company, Inc. would be the general contractor and would build the apartments for cost plus $30,000.00.
 
 
 8
 Following this plan, the partnership sought and received from the Prudential Insurance Company a commitment for $1,250,000.00 in permanent financing for the project.
 
 
 9
 To obtain short term construction capital, the partnership entered into a construction loan agreement with First State Bank in the amount of $1,250,000.00.
 
 
 10
 The loan agreement, as is customary in the industry, provided that the loan proceeds would be disbursed in progress payments substantially corresponding with the percentage of completion of the project. The agreement required the services of an architect or progress inspector, approved by the Bank, who would certify to the Bank the relative progress on the project prior to each draw on the loan proceeds. The agreement required an affidavit from the general contractor to accompany each draw stating that all bills incurred on the job had been paid.
 
 
 11
 With the approval of the Bank, the partnership hired D. Collier Houston to act as the progress inspector. His duties required him to inspect the job, make sure the work had been performed for which the progress payments were made, and to make certain that the materials listed on the draws as being stored at the job site were actually stored there.
 
 
 12
 The construction of the apartment complex began. Defendant Hodges, a partner, gave the Bank written authorization on behalf of the partnership to disburse the loan proceeds into the Malone Construction Company's general operating account.
 
 
 13
 Houston submitted eight draw certificates to the Bank and the entire loan proceeds were disbursed to Malone Construction Company. Within two weeks thereafter, the apartment project was closed because of the insolvency of the general contractor.
 
 
 14
 At the time the project was halted, Houston had certified that the project was 88-90 percent complete. In reality, the apartment complex was between 50 and 60 percent complete and all funds had been spent.
 
 
 15
 The Bank indicated that they were going to foreclose on the project and sue the partners for any deficiency owing plus attorneys' fees. To avoid this, Henslee and a Mr. Ted Miller took over the project. Henslee pledged $300,000.00 of his personal collateral to the Bank. Henslee also borrowed more than $500,000.00 from Fulton National Bank of Atlanta to complete the apartments but ran out of money before completion. Fulton foreclosed on the property. Henslee finally settled by paying Fulton a sum of $300,000.
 
 
 16
 Meanwhile, Henslee, in order to gather information about the failure of Malone Construction Company to complete the project within the amount of the construction loan, executed a covenant not to sue Ross Malone.
 
 
 17
 He also entered into a general release agreement with K. B. Hodges, the scope of which is the principal issue of this appeal.
 
 
 18
 Following execution of the release, Henslee began to discover facts of which he alleged he had been previously ignorant. These facts, he contends, portray a conspiracy to defraud him on the part of his partners, the progress inspector, the Bank and its officer, Norman Couch.
 
 
 19
 Henslee filed suit alleging that the defendants as joint tortfeasors had acted in a concerted manner to defraud him. He alleged as well that the Bank had breached its contract with the partnership by negligently disbursing the proceeds of the construction loan into the general operating account of Malone Construction Company while failing to insure that the loan proceeds were actually spent on the apartment complex.
 
 
 20
 By way of affirmative defense, Hodges contended that the execution of the release agreement barred any recovery by the plaintiffs against him. Henslee contended that the release agreement had been revoked prior to its acceptance by Hodges. The trial court conducted a separate trial on this issue. The jury found in its verdict that the release had been validly executed, accepted by defendant Hodges, and was in effect.
 
 
 21
 Following this verdict, judgment was entered in favor of defendant Hodges. The other defendants thereupon moved for summary judgment. Inasmuch as they were alleged joint tortfeasors, the release operated to discharge them, as well as Hodges, from any liability to the plaintiff. The trial court granted the summary judgments in favor of the defendants.
 
 
 22
 It is recognized by all that under the law of Georgia the release of one of several joint tortfeasors operates to release them all. Donaldson v. Carmichael, 102 Ga. 40, 29 S.E. 135 (1897); City of Buford v. Hosch, 104 Ga.App. 615, 122 S.E.2d 287 (1961); Tompkins Motor Lines v. Georgia Broilers, 260 F.2d 830 (5th Cir. 1958). Plaintiff seeks to avoid the effect of this rule. He presents four contentions:
 
 
 23
 (1) That he has learned facts which he had been unaware of prior to execution of the release which would have prevented his giving the release.
 
 
 24
 (2) That the release agreement may not release a claim resting upon fraud unless the facts alleged to constitute fraud were known to the plaintiff at the time the release was executed.
 
 
 25
 (3) That the plaintiff did not intend to release the alleged joint tortfeasors and that evidence of this intent should have been admissible to vary the terms of the agreement.
 
 
 26
 (4) That at the time the release was executed, the partnership was still in existence and for this reason, Hodges was in a confidential relationship with the plaintiff and hence had the duty to disclose to the plaintiff all known facts concerning the alleged fraudulent scheme.
 
 
 27
 The release agreement, a copy of which is attached hereto as an Appendix, provides in pertinent part as follows:
 
 
 28
 First party (Henslee) covenants and agrees that he will release Second Party (Hodges) from any and all claims, actions, causes of action, demands, rights and damages arising out of the joint venture or partnership and for notes and security deeds executed by second party in connection with the furtherance of said venture. (emphasis supplied).
 
 
 29
 It is seen that the operative language of the release purports to discharge Hodges from all liability of any nature whatsoever arising out of the project except those exceptions specified in the instrument.
 
 
 30
 In the case of Kennedy v. Bateman, 217 Ga. 458, 123 S.E.2d 656 (1961) the Supreme Court of Georgia considered the exact contention made by the plaintiff; that the plaintiff was unaware of facts which had they been known would have prevented execution of the release. The Court stated that "(t)he great weight of authority supports the doctrine that a release of a claim for personal injuries cannot be avoided merely because the injuries have proved more serious than the releasor, at the time of executing the release, believed them to be, or because the releasor made a bad bargain on account of a wrong estimate of the damages which would accrue." 217 Ga. at 461, 123 S.E.2d 656, 658.
 
 
 31
 Similarly, in James v. Tarpley, 209 Ga. 421, 73 S.E.2d 188, 189 (1952), the release agreement contained operative language nearly identical to that in the case at bar. The release was "from all and all manner of actions, causes of action, suits, debts, accounts, judgments, claims and demands whatsoever" as a result of a specified injury. The plaintiff in James did not know at the time the release was executed that he had suffered serious personal injury as well as property damages. The Court in holding that the scope of the release was broad enough to cover the release of an unknown claim stated that:
 
 
 32
 (t)he injured party did not have to sign the contract of release. If the parties to the contract intended that it should only compensate and relieve from liability for damage to an automobile and a laceration on the head of the plaintiff, then they should have so stated in the writing. They did not do this, but, on the contrary, clearly anticipated that other injuries might show up later when they recited in the release that the defendants were being released and forever discharged 'from all . . . suits . . . claims and demands whatsoever . . . as a result of or growing out of any and all injuries both to persons and . . . damages to property resulting or to result or which might result' from the accident. (citations omitted).
 
 
 33
 209 Ga. at 423, 73 S.E.2d at 190.
 
 
 34
 From the teachings of the above cases, it is seen, and we hold, that this contention is meritless.
 
 
 35
 Plaintiff's claim that fraud may not be released if the facts alleged to constitute fraud are unknown also lacks merit. Ga.Code Ann. 105-1901 states: "If the tort complained of does not amount to a crime, the person injured may consent to a satisfaction and settlement thereof." . . . Thus by the terms of the statute, a release may be given to discharge a claim of fraud. No crime appears from the facts of this case nor is such alleged.
 
 
 36
 We are aware that fraud in the procurement of a release will render it voidable. Yet, plaintiff has not alleged this type of fraud and from the record we perceive of none. All the cases cited by plaintiff, when carefully scrutinized, reveal that fraud in the procurement of the release was the type of fraud addressed by the Georgia Courts. Thus this contention is meritless.
 
 
 37
 With respect to plaintiff's contention that it was not his intent to release the other joint tortfeasors, this contention is also meritless. As the Georgia Supreme Court stated in the case of Crow v. Bowers, 204 Ga. 786, 51 S.E.2d 855, 857 (1949); "(w)here it is sought to set aside a written instrument which is a full contract of release from all further claims, and not merely a receipt, parol evidence is not admissible to vary or alter its terms." And even though in a general sense the plaintiff allegedly did not intend to release the other alleged joint tortfeasors, by operation of law, the other defendants were released. The rationale for this rule is that:
 
 
 38
 . . . There can, however, be but one satisfaction of the same damage or injury; and if, . . . the plaintiff proceeds, for a consideration, to fully settle and satisfy his claim against one, he cannot by the terms of such accord and satisfaction, where the injury or damage complained of is the same, limit the release to the defendant thus dealt with, but in such a case the claim itself becomes extinguished. Griffin Hosiery Mills v. United Hosiery Mills, 31 Ga.App. 450(1), 120 S.E. 789 (1923).
 
 
 39
 Plaintiff insists that the case of Knight v. Lowery, 228 Ga. 452, 185 S.E.2d 915 (1971) allows the introduction of evidence of his intent not to release the other tortfeasors. In Knight, the plaintiff had received personal injuries in an automobile accident. The plaintiff's injuries were treated by a Dr. Lowery, a neurosurgeon.
 
 
 40
 Subsequently, the plaintiff executed a release in favor of Harold and Jack Boling; the driver and owner of the automobile involved, the State Farm Mutual Automobile Insurance Company, the Bolings' insurance carrier; and "all other persons."
 
 
 41
 The plaintiffs thereafter filed suit against Dr. Lowery for his allegedly negligent treatment of the plaintiff. Dr. Lowery by affirmative defense asserted that the release barred any action against him.
 
 
 42
 The Supreme Court held that the driver of the vehicle and Dr. Lowery were not joint tortfeasors but rather successive tortfeasors. As such, the release did not have the effect of discharging Dr. Lowery unless it was specifically intended to do so. Parol evidence was admissible to show such intent.
 
 
 43
 The Court in Knight expressly stated that the rule that the release of one joint tortfeasor, by operation of law, releases all the joint tortfeasors was not being questioned.
 
 
 44
 This court long ago ruled that a release executed in favor of one joint tortfeasor, in full settlement of damages, acts also as a release in favor of all other joint tortfeasors. Donaldson v. Carmichael, 102 Ga. 40, 20 S.E. 135. The reasons underlying this doctrine are, first, that joint tortfeasors contribute to a single injury for which there is but one cause of action, and second, that once the damage has been paid in full by one joint tortfeasor, the injured party has no right to seek an additional or double recovery from another. We do not deal today with the soundness of that holding, since the situation which it exemplifies is not present in the instant case.
 
 
 45
 228 Ga. at 455, 185 S.E.2d at 917.
 
 
 46
 Thus, the time honored Georgia rule that the release of one joint tortfeasor automatically, by operation of law, operates to release them all, regardless of intent, remains quite undisturbed in Georgia and applies in this case. The Knight case is no authority to depart from this rule.
 
 
 47
 Plaintiff in his final assertion contends that the partnership did not terminate until the release was executed. The actions of the plaintiff belie such an assertion. As plaintiff admitted by deposition, the partnership came to an end when plaintiff and Mr. Miller took over the project and borrowed additional funds to complete the complex. At that point the partnership relationship had been terminated. Ga.Code Ann. § 75-107. Thus, when the subsequent release contract was formed, Hodges owed no special duty of disclosure to the plaintiff as a partner of the plaintiff's. Plaintiff's contention is meritless.
 
 
 48
 We turn now to address the contention that the Court erred in granting summary judgment in favor of the Bank. The gist of plaintiff's claim is that the Bank negligently failed to monitor the actual use of the loan disbursements and thereby failed to protect the plaintiff from incurring any loss.
 
 
 49
 The trial court, we hold, for a number of reasons did not err in granting summary judgment.
 
 
 50
 First, the Bank was alleged to be a joint tortfeasor and therefore was discharged by the release agreement between Hodges and the plaintiff.
 
 
 51
 Secondly, the partners affirmatively covenanted by execution of the construction loan agreement to "(u)se the proceeds of the loan solely for the purpose of paying the costs of construction and such incidental costs relative thereto as may be approved in writing from time to time by Lender, and for no other purpose." It is undisputed that Henslee and his partners contrary to the terms of their agreement with the Bank expended approximately $100,000 of the loan proceeds to purchase the tract of land upon which the apartments were to be built. They had contemplated that they could both construct the apartments and purchase the land with the construction loan and thereby not have to invest any of their own funds in the project. By the terms of the agreement, this conduct was a material violation of the loan agreement and an act of default, which terminated any obligation of the Bank to the plaintiff as the trial court correctly held.
 
 
 52
 Furthermore, we fail to perceive that the Bank owed any duty to the owners of the apartment complex to insure that the architect did not act in a negligent or fraudulent manner in certifying the draws on the loan proceeds. The loan agreement, with its requirement of an architect to certify the draw requests, was entered into for the protection of the Bank, inter alia, against the owners. Therefore, the partners, as owners, had no legal justification to rely upon the Bank to insure that the architect would protect their interests. Rather, the owners stood as incidental beneficiaries of the duties which ran from the architect to the Bank. See Williston on Contracts § 402.
 
 
 53
 It therefore follows that the judgment of the District Court must be and is
 
 AFFIRMED.APPENDIX
 
 54
 GEORGIA, DOUGHERTY COUNTY.
 
 
 55
 THIS AGREEMENT, made and entered into by and between MILES L. HENSLEE, hereinafter referred to as First Party, and KENNETH B. HODGES, JR., hereinafter referred to as Second Party;
 
 WITNESSETH:
 
 56
 WHEREAS, First Party and Second Party heretofore were each holders of an undivided interest in approximately nineteen (19) acres of land in Brunswick, Glynn County, Georgia, and
 
 
 57
 WHEREAS, approximately ten (10) acres were used by First and Second Parties, along with Rosser Malone, Jr. and James O. Blair, for a joint venture or partnership for the purpose of constructing and operating 108 apartments to be known as "Frederica Apartments" to be built by Malone Construction Company, and
 
 
 58
 WHEREAS, the remaining nine acres were mortgaged to First National Bank of Brunswick, Georgia, and
 
 
 59
 WHEREAS, the Parties to this contract and the other Parties above mentioned all signed the construction loan security deed for the apartment project and the security deed to First National Bank of Brunswick, and
 
 
 60
 WHEREAS, the apartment construction loan was exhausted with the apartments incompleted and with liens for several thousand dollars filed against the property and the contractor, Malone Construction Company, Inc., was insolvent, and
 
 
 61
 WHEREAS, First State Bank and Trust Company, Albany, Georgia, served notice of attorney's fees and notice of suit on all Parties and instituted foreclosure action on its security deed, and
 
 
 62
 WHEREAS, First Party, in order to protect himself and the other Parties involved from suit, entered into an agreement with First State Bank and Trust Company to purchase the apartment project and thereby relieve the other Parties from liability on said construction loan indebtedness, and
 
 
 63
 WHEREAS, subsequent to foreclosure First Party, along with ALBERT T. MILLER, purchased the ten acre apartment project and refinanced the same in their own names, and
 
 
 64
 WHEREAS, First National Bank of Brunswick has foreclosed its security deed and threatens to sue the makers of the note for deficiency, and
 
 
 65
 WHEREAS, each of the parties hereto has or may have claims or counter claims against the other for losses which have been or may be suffered as a result of the failure of the joint venture of partnership, and
 
 
 66
 WHEREAS, both parties hereto realize that the venture can no longer succeed and it is in the best interests of both parties to settle any disputes, claims, counter claims or action which any have or might have against the other;
 
 
 67
 NOW THEREFORE, for and in consideration of the mutual benefits, considerations, agreements and covenants herein set forth, said parties do hereby contract, covenant and agree as follows:
 
 1.
 
 68
 First Party covenants and agrees that-he will release Second Party from any and all claims, actions, causes of action, demands, rights and damages arising out of the joint venture or partnership and/or notes and security deeds executed by second party in connection with the furtherance of said venture.
 
 2.
 
 69
 Second party does hereby release First Party from any and all claims, actions, causes of action, demands, rights and damages arising out of the joint venture or partnership and/or notes and security deeds executed by first party in connection with the furtherance of said venture, or arising out of any other matter or thing whatsoever.
 
 3.
 
 70
 In order to prevent the loss of the property foreclosed by First National Bank of Brunswick and the possible further loss of a deficiency judgment being rendered in the event of suit by First National Bank of Brunswick, First Party agrees to purchase the nine acres which has been foreclosed by the First National Bank of Brunswick and Second Party agrees to become an unconditional endorser and guarantor of one-half the loan which First Party must make in order to purchase said property under the following conditions:
 
 
 71
 (a) Said nine acres would be given as security for the loan made by First Party to purchase said nine acres;
 
 
 72
 (b) Second Party's liability, as a result of his endorsement, would be limited to one-half the amount of said note executed by First Party;
 
 
 73
 (c) First Party hereby agrees to indemnify and hold harmless Second Party from any and all claims of any nature including attorney's fees which may at any time be made against Second Party in any sum in excess of one-half of the principal and interest on said note as a result of Second Party having endorsed said note; and
 
 
 74
 (d) Second Party hereby agrees to indemnify and hold harmless First Party from any and all claims of any nature including attorney's fees which may at any time be made against First Party in any sum in excess of one-half of the principal and interest on said note as a result of second party having endorsed said note.
 
 4.
 
 75
 Notwithstanding anything else in this agreement, Second Party also agrees that he will be liable for 25% of any judgment which might be rendered against First Party in a certain civil action by Lynes Mortgage Company against Miles L. Henslee in the Lee County Superior Court.
 
 5.
 
 76
 The parties agree that upon the execution of this instrument the joint venture or partnership agreement is terminated as to said parties.
 
 
 77
 IN WITNESS WHEREUNTO, said parties has set their hands and seals this 10th day of October, 1973.
 
 PARTY OF THE FIRST PART:
 
 78
 /s/ Miles L. Henslee L.S.
 
 Signed, sealed and delivered
 
 79
 in the presence of:
 
 
 80
 /s/ H. T. Null
 
 
 81
 /s/ Fred E. Bartlett, Jr.
 
 NOTARY PUBLIC
 PARTY OF THE SECOND PART:
 
 82
 /s/ Kenneth Hodges, Jr. L.S.
 
 Signed, sealed and delivered
 
 83
 in the presence of:
 
 
 84
 /s/ Sonja M. Weed
 
 
 85
 /s/ Eleanor Lambert
 
 NOTARY PUBLIC