Ernest MENENDEZ and Theresa Menendez, Plaintiffs-Appellants,

v.

PERISHABLE DISTRIBUTORS, INC., and Edgar Newton Crowe, Jr., Defendants-Appellees.

No. 83–8470.

United States Court of Appeals, Eleventh Circuit.

June 25, 1985.

Don C. Keenan, David S. Bills, Atlanta, Ga., for plaintiffs-appellants.

M. Scott Barksdale, Atlanta, Ga., for defendants-appellees.

Before GODBOLD, Chief Judge, JOHNSON and CLARK, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff below, Ernest Menendez, appeals from an order of the district court directing a verdict in favor of the appellees, Perishable Distributors, Inc., and Edgar Newton Crowe, Jr. Menendez claims the district court erroneously allowed the appellees to amend their answer at trial to allege the affirmative defense of release without giving him a full and fair opportunity to obtain and present extrinsic evidence explaining the intent of the contracting parties not to release the appellees from liability. Because the applicable state law permits Menendez to present extrinsic evidence showing an intent contrary to the express terms of the release and because Menendez was deprived of a full and fair opportunity to do so, we reverse.

Menendez, a Florida citizen, was a passenger in an automobile owned and being operated by Ronald Gordon Pearson when Pearson lost control of the automobile and was struck head-on by a tractor-trailer owned by Perishable Distributors and be-

ing operated by Crowe. Menendez was injured in this collision, which occurred in Georgia. Invoking diversity jurisdiction and alleging that the combined negligence of Pearson and Crowe had caused the collision and his injuries, Menendez filed suit in the United States District Court for the Northern District of Georgia.[1] Pearson, also a Florida citizen, was dismissed as a defendant in this action due to the absence of diversity between him and Menendez. In response, Menendez filed a separate suit against Pearson in the Circuit Court of Dade County, Florida, alleging that Pearson's negligence had caused the accident.

Some months before trial began in the present case, Pearson and Menendez reached a settlement in the Florida state court action. In connection with this settlement, Menendez signed a release containing a boilerplate clause forever discharging Pearson "and all other persons, firms or corporations ... from any and all claims, demands, actions, causes of action or suits of any kind ..." arising as a result of the collision. Perishable Distributors and Crowe were unaware of this settlement agreement when their trial began in the Northern District of Georgia.

Menendez was the first witness called at trial. During Menendez's cross-examination, the appellees learned that he had settled with Pearson in the Florida state court action. Counsel for the appellees immediately raised the issue that, in connection with the settlement, Menendez might have signed documents constituting a release of joint tortfeasors which would bar the present action under Georgia law. Appellees' counsel requested the court to require Menendez to produce a copy of the settlement agreement. The attorney for Menendez, Mr. Robert Falanga, responded that, although he had attended the negotiations which led to settlement of the Florida case, he had returned to Georgia before the settlement documents were signed and thus

did not know the terms of the agreement. Menendez testified that he, too, did not recall the contents of the documents he had signed. Menendez did not know if he had signed a release or a covenant not to sue, and he did not know the difference between the two. Falanga then stated that the Florida attorney who had represented Menendez in the state court action would have copies of the agreement. Further, Falanga argued that the burden of discovering the agreement should be on the appellees and not Menendez. After this exchange, the district court announced that if the settlement documents proved to comprise a release the present action would be dismissed. The court directed Menendez to ascertain the terms of the agreement and granted a brief recess to allow Falanga to telephone the Florida attorney for this purpose.

After the recess, Falanga informed the court that he had been unable to reach the Florida attorney personally but that he had spoken with someone in this attorney's office. That individual, however, had not been able to locate Menendez's file or provide the name of the Florida judge who had handled the case. Falanga then told the court that he recalled the defendants in the Florida case having stated on the record as part of the settlement agreement that "they would not hinder, delay, participate nor in any way interfere with any other litigation pending in any other states." The district court again stated that it intended to dismiss the present lawsuit if it turned out Menendez had signed a release. The court granted an extended lunch recess to allow Falanga to search for a copy of the settlement agreement in his own files and to allow the parties to formulate and research their positions on the effect of a release in this case.

When he returned from the lunch recess, Falanga produced a copy of the settlement

---

1. Menendez also filed suit on the same basis and against substantially the same defendants in the Southern District of Florida. That case was transferred to the Northern District of Georgia and consolidated with the instant lawsuit.

Theresa Menendez, the appellant's wife, claimed loss of consortium in this consolidated case. A stipulation of dismissal by consent of the parties disposing of her claim has been filed with the district court.

agreement. The court then heard arguments from both parties on the effect of the release. Falanga contended that under Georgia law the release should be interpreted in light of the extrinsic evidence of the contracting parties' intent not to release the appellees from liability. The court agreed with Falanga's interpretation of Georgia law and directed that he produce any documents or other evidence from which the actual intent of the contracting parties could be ascertained. Falanga responded:

> It is my understanding of the law that in order to plead a formal release, as a bar to recovery, it is an affirmative defense. There's nothing in the pleadings of this case to place me on notice that they were going to intend to plead the affirmative defense of a release. Based on that, I would have to claim surprise, which would prevent me from having taken the steps to have gotten the record up here as it existed down there in the Circuit Court of Dade County.

The district court rejected this argument, stating that it was the duty of the plaintiff's attorney to appear in court with the documents needed to put this issue in perspective. The court again directed Falanga to present whatever evidence he might have in his possession concerning the actual intent of the parties as to the effect of the release. Falanga then replied that he did not at the moment have any evidence. At this point, counsel for the appellees moved for summary judgment, dismissal, or a directed verdict on the ground that the release barred further prosecution of the lawsuit. The court allowed the appellees to amend their pleadings to allege the affirmative defense of release and then directed a verdict in their favor.

In actuality, Georgia law does not permit the introduction of extrinsic evidence to explain the intent of contracting parties where the terms of a release are not ambiguous. *Henslee v. Houston,* 566 F.2d 475, 478, 479–80 (5th Cir.1978); *see also Crow v. Bowers,* 204 Ga. 786, 51 S.E.2d 855, 857 (1949). More importantly, Georgia follows the common law rule that a general release executed in favor of one joint tortfeasor in total settlement of a claim releases all joint tortfeasors potentially liable on the claim, *regardless* of whether the settlement agreement contains a clause expressly releasing the other joint tortfeasors either by naming them specifically or by referring generally to all other persons or entities that might be liable. *Henslee v. Houston, supra,* 566 F.2d at 480; *Zimmerman's, Inc. v. McDonough Construction Co.,* 240 Ga. 317, 319, 240 S.E.2d 864, 866 (1977). Here, the unambiguous terms of the settlement agreement released Pearson from liability and therefore, were Georgia law to apply, also released the appellees from liability as joint tortfeasors. Thus, if the district court had been correct in holding that Georgia law governed both the effect of the release and the admissibility of extrinsic evidence, entering the directed verdict would have been proper, even though the court would have erred slightly by giving Menendez an opportunity to introduce extrinsic evidence.

The release, however, was executed in Florida in settlement of litigation pending in a court of that state. By statute, Florida's legislature has abrogated the common law rule as to the effect of a partial release given to one of several joint tortfeasors. Fla.Stat. § 768.041. The statute states that a release of one tortfeasor "shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort...." [2] *Id.*

---

2. Section 768.041 provides in full:

(1) A release or covenant not to sue as to one (1) tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.

(2) At trial, if any defendant shows the court that the plaintiff, or any person lawfully on his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the

Without creating an inconsistency, the Florida Supreme Court has interpreted this statute to permit the release of *all* joint tortfeasors, but only if the terms of the agreement clearly express the releasing party's intent to do so, *Hurt v. Leatherby Insurance Co.*, 380 So.2d 432, 433 (Fla. 1980), *and* extrinsic evidence does not prove otherwise. Indeed, if the agreement contains "all-inclusive language discharging all joint tortfeasors" which appears within a "general printed release," the non-settling joint tortfeasors cannot rely solely on the terms of the release as a defense. *Jowanowitch v. Florida Power & Light Co.*, 381 So.2d 750, 752 (Fla.Dist. Ct.App.1980), *citing Hurt v. Leatherby Insurance Co., supra*, 380 So.2d at 433. Extrinsic evidence of the contracting parties' intent must also support the defense, and thus extrinsic evidence is clearly admissible. *Id.; see also Fidelity & Casualty Company of New York v. Cope*, 444 So.2d 1041, 1046 (Fla.Dist.Ct.App.1984) (Lehan, J., concurring). Therefore, if Florida law were to govern the effect of the release and the admissibility of extrinsic evidence in this case, it would render viable Menendez's claim that he was deprived of procedural due process when the district court allowed the appellees to amend their answer and assert the affirmative defense of release without giving him a full and fair opportunity to obtain and present rebuttal evidence of the contracting parties' actual intent.

Immediately after the district court directed a verdict in favor of the appellees, Falanga studied more closely both the substantive law of Georgia and Florida concerning a release and Georgia's applicable choice of law rules. He decided that Florida law, in fact, governed the effect of the release and the admissibility of extrinsic evidence. Accordingly, on the following day he filed in Menendez's behalf a motion for reconsideration of the directed verdict, arguing this time that Florida law should

apply. The district court denied this motion, holding that Georgia law controlled the effect of the release and the admissibility of extrinsic evidence. The present appeal ensued.

■ In a diversity action, a federal district court must apply the choice of law rules of the state in which it is located. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). This case was being tried in the Northern District of Georgia, and so the choice of law principles of the State of Georgia determine whether Georgia or Florida law governs the effect of the release and the admissibility of extrinsic evidence. Because it was unclear under Georgia's choice of law rules whether the district court should apply the law of Florida (the state in which the contractual release had been executed) or the law of Georgia (the state in which the alleged tort had occurred), we certified the question to the Supreme Court of Georgia for adjudication. *Menendez v. Perishable Distributors, Inc.*, 744 F.2d 1551 (11th Cir.1984). The Georgia court has rendered a definitive opinion, holding that both the effect of the release and the admissibility of extrinsic evidence must be determined under Florida law. *Menendez v. Perishable Distributors, Inc.*, 254 Ga. 300, 329 S.E.2d 149 (1985) (per curiam) (published as an Appendix to this opinion). Accordingly, we now consider the merits of Menendez's procedural due process claim.

■ Generally, a litigant's failure to assert an affirmative defense in a responsive pleading results in a waiver of that defense. *See, e.g., American National Bank of Jacksonville v. Federal Deposit Insurance Corp.*, 710 F.2d 1528, 1537 (11th Cir.1983). Nevertheless, without deciding whether the appellees in this case could have *unknowingly* waived the issue of release, we hold that the district court's al-

time of rendering judgment and enter judgment accordingly.

(3) The fact of such a release or covenant not to sue, or that any defendant has been

dismissed by order of the court shall not be made known to the jury.

Fla.Stat. § 768.041.

lowance of the amendment to their answer was proper under Rule 15(b) of the Federal Rules of Civil Procedure,[3] but that the court abused its discretion in permitting the amendment without granting Menendez a full and fair opportunity to obtain and present evidence in rebuttal.

■ Effectively creating an exception to the general waiver principle, Rule 15(b) authorizes the district court to permit belated amendments and directs the court to "do so freely when the presentation of the merits of the action will be subserved thereby...." Fed.R.Civ.P. 15(b). However, this authorization to permit amendments is limited by the Rule's requirement that the opposing litigant be given a fair chance to answer the newly asserted defense by having an opportunity to gather and present additional evidence.[4] The court may grant a continuance for this purpose, and a decision to grant or deny a continuance cannot

be disturbed on appeal unless the court abused its discretion. *Roberts v. Williams,* 456 F.2d 819, 824 (5th Cir.), *cert. denied,* 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971).

■ In the present case, the district court abused its discretion by permitting the appellees to amend their answer at trial and assert the affirmative defense of release without giving Menendez a fair opportunity to gather and present rebuttal evidence which, under the applicable state law, he was entitled to introduce.[5] Claiming surprise, Menendez objected to the amendment of the appellees' answer and to the introduction of the release as evidence. He clearly was not allowed the time needed to obtain a copy of the record in the Dade County case, which he genuinely claimed would show that the intent of the contracting parties was not to bar the prosecution

3. Rule 15(b) states, in relevant part:
If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

4. Professors Wright and Miller explain the operation of Rule 15(b) as follows:
In some cases Rule 15(b) will serve as an exception to the proposition that a failure to assert a Rule 12(b) defense, or to plead an affirmative defense, or to interpose a compulsory counterclaim, results in a waiver of that defense or counterclaim and its preclusion from the case as well as subsequent litigation. Thus, for example, if evidence relating to an unpleaded affirmative defense is introduced without objection, Rule 15(b) requires the issue to be treated as if it actually had been raised by the pleading.... If evidence of an unpleaded affirmative defense is objected to, Rule 15(b) gives the trial court discretion to permit the amendment of the pleadings over objection when it will promote the presentation of the merits of the action, the adverse party will not be prejudiced by the late assertion of the defense, and he has ample opportunity to meet the issue.
. . . . .

[E]ven if the objecting party demonstrates that he is not prepared to meet the new evidence, ... the court still may permit the amendment if a continuance will cure the prejudice and enable the objecting party to meet the changed situation.
6 C. Wright & A. Miller, Federal Practice & Procedure §§ 1492, 1495 (1971); *see International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888, 890 (5th Cir.1977), *quoting Monod v. Futura, Inc.,* 415 F.2d 1170, 1174 (10th Cir.1969) ("amendment of the pleadings will not be permitted where it results in substantial prejudice to a party, 'i.e., whether he had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be retried on a different theory'").

5. On a separate issue, however, we hold that the district court did not abuse its discretion in ruling, under the particular circumstances of this case, that Menendez and not the appellees must produce a copy of the settlement agreement. Since trial had already begun, judicial economy and procedural efficiency dictated that the party having the greatest knowledge of and access to the documents bear the burden of producing them.
Nor did the district court dismiss this action as a sanction for Falanga's failure to inform opposing counsel and the court of the existence of a settlement agreement. Contrary to Menendez's assertions, the record is clear that the district court simply interpreted Georgia law to bar further prosecution of this case because the release had been discovered.

of the instant lawsuit. The district court's failure to grant Menendez a continuance so that this evidence could be presented resulted in substantial prejudice and constitutes an abuse of discretion.

REVERSED.

## APPENDIX

In the Supreme Court of Georgia

Decided: MAY 2, 1985

4175. MENENDEZ et al. v. PERISHABLE DISTRIBUTORS, INC., et al.

PER CURIAM.

The United States Court of Appeals for the Eleventh Circuit sent us three certified questions. The answers to questions one and two are that Florida law applies. The third question is mooted by our answers above.

The facts of the case may be found in greater detail in *Menendez v. Perishable Distributors, Inc.,* 744 F.2d 1551 (11 Cir. 1984). Briefly stated, appellant was a passenger in an automobile traveling through Georgia when a collision occurred. Appellant and the driver were Florida residents at the time the suit was filed. The owner of the other vehicle and its driver resided in Georgia. Appellant filed suit in a Federal District Court in Georgia against the two drivers and the owner of the other vehicle. The driver of the automobile was dismissed by the court due to lack of total diversity. Appellant filed a separate suit in a Florida State Court against the automobile driver. The Florida case was settled and appellant signed a release in Florida. During the course of the trial in Federal Court against the driver and the owner of the other vehicle, appellees, the existence of the release was discovered. Appellees were allowed to orally amend their pleadings to assert the release as an affirmative defense, and the court directed a verdict in their favor.

In Georgia a release is "subject to the same rules as govern ordinary contracts in

writing, and parol evidence is not admissible to contradict or vary the terms or stipulations." *Southern Bell Telephone and Telegraph Co. v. Smith,* 129 Ga. 558, 59 S.E. 215 (1907); See also *Henslee v. Houston,* 566 F.2d 475, 479–80 (5th Cir.1978). A general release or a release which contains no reservations, executed in favor of one joint tortfeasor, in full settlement of damages, releases all joint tortfeasors. *Zimmerman's, Inc. v. McDonough Construction Co., et al,* 240 Ga. 317, 319, 240 S.E.2d 864 (1977). Florida has, by statute, abolished the common law rule that the release of one tortfeasor discharges the other tortfeasors. F.S.A. § 768.041.

QUESTION ONE: "Under the choice of law rules of the State of Georgia, what state's substantive law governs the effect of a release that was executed in the State of Florida and that by its terms, forever discharged 'all ... persons, firms or corporations ... from any and all claims, demands, actions causes of actions or suits of any kind or nature whatsoever' arising from an injury-causing accident which occurred in Georgia?"

In Georgia, a release is a contract. See *Southern Bell Telephone and Telegraph Co.,* supra, 129 Ga. at p. 558, 59 S.E. 215. Under the holding of *General Telephone Co. of the Southeast v. Trimm,* 252 Ga. 95, 311 S.E.2d 460 (1984), the Florida law controls the effect of the release under the rule of *lex loci contractus.*[1]

QUESTION TWO: "Under the choice of law rules of the State of Georgia, what state's substantive law governs the admissibility of extrinsic evidence establishing the intent of the contracting parties who executed a release in the State of Florida that, by its terms, forever discharged 'all ... persons, firms or corporations ... from any and all claims, demands, actions, causes of actions or suits of any kind or nature whatsoever' arising from an injury-causing accident which occurred in Georgia?"

---

1. See, Ehrenzweig, Release of Concurrent Tortfeasors in the Conflict of Laws: Law and Reason Versus the Restatement, 46 Va.L.Rev. 713 (1960).

The rule of *lex loci contractus* controls all substantive matters, such as "the *nature, construction* and *interpretation* of contracts. [Cits.]" *Cox v. Adams*, 2 Ga. 158, 165 (1847). The rule of "*lex fori* controls all matters affecting only the remedy, such as rules of evidence, methods of shifting the burden of proof, and the presumptions arising from given states of fact. [Cit.]" *Hill v. Chattanooga Railway and Light Co.*, 21 Ga.App. 104, 93 S.E. 1027 (1917).

The parol evidence rule " 'is not one merely of evidence, but is one of positive or substantive law founded upon the substantive rights of the parties.' [Cit.]" *Albany Federal Savings & Loan Assn. v. Henderson et al.*, 198 Ga. 116, 143, 31 S.E.2d 20 (1944); see also *Dunn v. Welsh*, 62 Ga. 241, 244 (1879). Likewise, contemporaneous documents are to be considered "in pari materia" with a form release "so that the intention of the parties may be ascertained and allowed to control." *Georgia Highway Express, Inc., v. United Parcel Service, Inc.*, 164 Ga.App. 674, 297 S.E.2d 497 (1982). Because this extrinsic evidence consisting of contemporaneous documents may be used to determine the intention of the parties, and thus their substantive rights, the law of Florida controls under the rule of *lex loci contractus*.

QUESTION THREE: "Assuming the answers to the previous questions are to the effect that Georgia law governs: Under the substantive law of the State of Georgia, can litigants stipulate during oral argument before an appellate court to choice of law rules that differ from the choice of law rules later pronounced by the courts of the State of Georgia, where accepting the stipulation would result in an application of another state's substantive law to govern the effect of a release and the admissibility of extrinsic evidence establishing the intent of the contracting parties?"

Our answer to questions one and two above make the third question moot.[2]

*Certified questions answered.*

All the Justices concur, except GREGORY, J., who dissents.

GREGORY, Justice, dissenting.

I dissent for the reason that I would adopt the "center of gravity" theory as indicated in my dissenting opinion in *General Telephone Co. of the Southeast v. Trimm*, 252 Ga. 95, 311 S.E.2d 460 (1984). That choice of law theory, which I will not undertake to analyze on these facts, might very well bring about a different result from that reached in the majority opinion.

---

**2.** We acknowledge appellee's argument regarding pleading and proof, and note that "a federal court may take judicial notice of foreign law regardless of state court practice." *Old Hickory Products Co., Ltd. v. Hickory Specialties, Inc.*, 366 F.Supp. 913 (D.C.Ga.1973).