411 So.2d 902 (1982)
Ward W. KELLY, Appellant,
v.
Grace B. WILLIAMS, As Personal Representative of the Estate of Larry Arthur Williams, Deceased, Grace B. Williams, Individually and Allstate Insurance Company, Appellees.
No. 79-162.
District Court of Appeal of Florida, Fifth District.
March 3, 1982.
Rehearing Denied April 1, 1982.
*903 Richard A. Krause, Ormond Beach, for appellant.
Christopher W. Wickersham, Daytona Beach, for appellee, Grace B. Williams.
Robert K. Rouse, Jr., Daytona Beach, for appellee, Allstate Ins. Co.
SHARP, Judge.
Kelly appeals an order entered after a pre-trial conference, which dismissed his cause with prejudice. The issues in the suit were comparative negligence and Kelly's damages stemming from an automobile collision caused in part by the negligence of Williams' deceased husband. We affirm the order because Kelly voluntarily agreed to accept a specific sum in settlement, and no justiciable issues remained for trial.
Before trial the parties entered into a stipulation[1], filed with the court, in which Allstate agreed to pay Kelly Fifty Thousand Dollars ($50,000), the liability limit of Williams' policy. The Stipulation provided in pertinent part:
2. The Defendant ALLSTATE agrees to pay Plaintiff, WARD W. KELLY the sum of Fifty Thousand Dollars ($50,000) within five (5) days of the execution of this Stipulation/Agreement by counsel for all Defendants and counsel for Plaintiff.
3. In consideration of the said payment, and the other agreements contained herein, Plaintiff agrees and promises to execute a Satisfaction of Judgment with regard to any and all judgments which are entered against GRACE B. WILLIAMS, and to deliver said executed Satisfaction of Judgment to [Williams' attorney] within sixty (60) days of the conclusion of the above-captioned cause (both in the Florida State Trial Courts and the Florida State Appellate Courts), unless a bad-faith action is commenced against ALLSTATE within that time. In the event that a bad-faith action is filed against ALLSTATE within that time, Plaintiff agrees and promises to execute a Satisfaction of Judgment with regard to any and all judgments which are entered against GRACE B. WILLIAMS, and to deliver said executed Satisfaction of Judgment to Christopher Wickersham, Esq. within ten (10) days of the conclusion of any bad-faith action against ALLSTATE arising out of or derived from the above-captioned law suit (both in the Florida State Trial Courts and the Florida State Appellate Courts). Said Satisfaction or Satisfactions of Judgment shall satisfy any and all judgments entered against GRACE B. WILLIAMS because of the above-styled litigation, and said Satisfaction shall be executed and delivered within the appropriate stated period of time, regardless of the outcome of any bad-faith action against ALLSTATE.
4. Additionally, and in further consideration of the said payment and other agreements contained herein, Plaintiff agrees and promises not to execute or to seek to execute or to cause execution upon any judgment entered in connection with or because of the above-styled action against the property or assets of GRACE B. WILLIAMS until at least twenty (20) days have elapsed after the conclusion of any bad-faith action commenced against ALLSTATE.
5. It is agreed and stipulated that in the above-styled cause, the liability of the Defendant, ALLSTATE, is limited to Fifty Thousand Dollars ($50,000), as to any judgment which may be entered at the conclusion of or as a result of the above-captioned cause and action, and that no judgment can or should be entered against ALLSTATE in excess of Fifty Thousand Dollars ($50,000) as a result of the above-styled action. In addition, it is *904 agreed that the said Fifty Thousand Dollars ($50,000) paid to Plaintiff as agreed herein, should be set off from any judgment rendered as a result of the above-captioned cause against ALLSTATE, and before any such judgment be entered in connection with the above-syled [sic] cause. However, it is also stipulated and agreed that the payment of the Fifty Thousand Dollars ($50,000) to Plaintiff as agreed herein, and the agreement to satisfy judgment contained herein and the agreement not to execute as contained herein, will not operate to prevent or hinder GRACE B. WILLIAMS and/or Plaintiff from filing a legal action against ALLSTATE for alleged bad-faith. (Emphasis supplied.)
Within five days after execution of the stipulation, the Fifty Thousand Dollars ($50,000) was paid to Kelly. The lower court ordered a supplemental pre-trial conference to determine the legal effect and consequences of the stipulation, and appellees moved to dismiss the cause with prejudice. The trial judge ruled that execution of the stipulation precluded "any actual or potential exposure to liability" on the part of Williams and therefore foreclosed any bad faith action against Allstate. The motion to dismiss was granted on the basis that no justiciable issues remained before the court.
Appellant contends that the stipulation clearly contemplated his future third-party action against the insurer for bad faith negotiations, an action which may be asserted after entry of final judgment in the original liability case. See, e.g., Cotton States Mutual Insurance Company v. Trevethan, 390 So.2d 724 (Fla. 5th DCA 1980). However, a cause of action for bad faith arises when the insured is legally obligated to pay a judgment that is in excess of his policy limits. Farmers Insurance Exchange v. Henderson, 82 Ariz. 335, 313 P.2d 404 (1957); 7C J. Appleman, Insurance Law and Practice, § 4712 (Berdal ed. 1979). Where the parties have stipulated, as they have in this case, that Williams' and Allstate's liability is limited to the fifty thousand dollars ($50,000) policy amount, then no cause of action for bad faith can exist. See Stubblefield v. St. Paul Fire & Marine Ins. Co., 267 Or. 397, 517 P.2d 262 (1973).
The essence of a "bad faith" insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits)  all of which results in the insured being exposed to an excess judgment.[2] Under the arrangement stipulated to by the parties in this case, the insured could not be exposed to an excess judgment under any circumstances. If one was obtained, the insured was entitled to a complete satisfaction of it, as soon as the judgment became final or enforceable. The stipulation completely safeguarded the insured, and therefore it completely discharged the insurer's duty to its insured.
We do not think Critz v. Farmers' Ins. Group, 230 Cal. App.2d 788, 41 Cal. Rptr. 401, 12 A.L.R.3d 1142 (3d Dist.Ct.App. 1964), cited by the dissent, is applicable to this case. There the injured party was allowed to sue the insurer for the insured's bad faith claim (having obtained that right by written assignment, which we realize is not necessary in Florida).[3] To obtain the assignment, the injured party covenanted with the insured that he would not execute on the excess judgment, if he obtained one. The court ruled that this promise did not "blot out" the personal judgment against the insured. It would clearly be of record, and at least in Florida, it would affect the insured's credit and title to real estate. Further, the arrangement in Critz was worked out between the insured and the injured party when the insurer refused to defend or participate. In this case, the insurance company participated in the stipulation, and was a *905 party to the lawsuit. Kelly's attempted reservation of his rights against the insurer were not effective, since in the body of the stipulation, the baby was thrown out with the bath water. See Stephen Bodzo Realty, Inc. v. Willit International Corp., 405 So.2d 269 (Fla. 4th DCA 1981).
It is apparent that a mistake was made, at least by Kelly, as to the legal effect of the stipulation. However, he did not make any showing at the trial court level sufficient to establish grounds to release him from the stipulation;[4] nor did he file any motion before the trial court seeking to be relieved from it. Absent a basis to invalidate the stipulation, it is binding and enforceable, and we cannot relieve him from its legal consequences.[5]
AFFIRMED.
ORFINGER, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
While this case arises out of a simple automobile accident, the various legal issues and their relationships are complex. Among the three parties, appellant Kelly (the victim), appellee Williams (the insured tortfeasor's estate), and appellee Allstate (the insurer), there are five potential causes of action. 1. The first is a cause of action in tort in Kelly against Williams for the alleged negligence of Williams' deceased husband. 2. The second is a cause of action in contract in Williams against her insurance company, Allstate, on Allstate's contractual duties under its policy of vehicular liability insurance which includes an agreement to promptly pay covered claims. 3. The third cause of action is in contract in Kelly and against Allstate because Allstate's contractual duties to its insured, Williams, can now be directly enforced by Kelly under third party beneficiary concepts, this theory and cause of action being specifically recognized by our supreme court in Shingleton v. Bussey, 223 So.2d 713 (Fla. 1969). 4. The fourth cause of action is in tort in Williams and against Allstate and arises out of any breach of Allstate's duty to Williams to use good faith in conducting settlement negotiations with Kelly. Thus, it is an extension in tort for a bad faith breach of the contractual duties involved in cause two. This fourth cause of action is the traditional cause of action against an insurance company for bad faith settlement negotiations. See, e.g., American Fire and Casualty Company v. Davis, 146 So.2d 615 (Fla. 1st DCA 1962). This is a "bad faith  excess over" claim in favor of the insured. 5. Finally, the fifth cause of action is an action in tort in Kelly and against Allstate based on any bad faith in Allstate's settlement negotiations with Kelly. As such, this cause of action is the logical extension of the previously discussed legal theories. Just as the third cause of action was derived from the second based on third party beneficiary concepts, Shingleton v. Bussey, the fifth cause of action is similarly derived from the fourth by applying the same third party beneficiary analysis, our supreme court having recognized this approach and established this as a separate cause of action. Thompson v. Commercial Union Insurance Company of New York, 250 So.2d 259 (Fla. 1971). This is a "bad faith  excess over" claim in favor of the victim. A prior judgment in the basic tort-negligence case (cause 1 above) establishing damages in excess of the policy limits is an absolute necessary element of, or condition prerequisite to, this fifth tort bad faith cause of action by a victim against an insurer (cause 5 above) just as it is in the traditional tort bad faith cause of action by the insured against an insurer (cause 4 above). While these five causes of action are interrelated, they are separate and distinct causes of action and the failure of the trial judge and the majority to recognize and to distinguish them leads to the majority holding. The parties settled causes of actions 1 and 3 but not cause of action 5 and the majority's opinion effectively precludes Kelly from *906 ever establishing his tort bad faith cause of action against Allstate.
In the instant case, Kelly sued Williams for injuries received in a vehicle collision (cause 1 above) and joined Allstate (cause 3 above), with whom Williams had $50,000 of liability insurance. Kelly contended his damages far exceeded Williams' policy limits but offered to settle for those limits.[1] Allstate declined to settle. After long delay Allstate offered to settle for the policy limits. Kelly then contended that Allstate had acted in bad faith (by declining to settle for the policy limits when first offered and therefore having wrongfully delayed settlement) and asserted that he could recover a judgment in excess of the policy limits and that Allstate would be liable for the excess judgment (cause 5 above) because of its bad faith delay in settlement.[2] Allstate did not admit that Kelly's damages exceeded the policy limits or that it was guilty of bad faith but again offered, belatedly, to settle for the policy limits.[3] Kelly refused to make an unqualified settlement of all three of his causes of action but the following agreement was negotiated: In exchange for the immediate payment of the $50,000 policy limits, Kelly would retain his right to prove his total amount of damages but would agree to release Williams from liability for any amount of the ultimate judgment that exceeded the policy coverage. This release provision related only to Kelly's basic tort-negligence cause of action (cause 1 above). In the event the judgment did exceed the coverage, Kelly reserved his right to pursue Allstate in a separate bad faith settlement negotiation claim (cause 5 above) for any such excess amount; however, Kelly also agreed that Allstate's liability would be limited to $50,000 as to cause 3 above, with the caveat that this did not affect Allstate's possible future liability for bad faith (cause 5 above).[4] This release *907 provision related only to Kelly's third party beneficiary (Shingleton v. Bussey) contract case against Allstate (cause 3 above). The stipulation clearly contemplated that Kelly's damages in the instant case might ultimately be proved to exceed $50,000, and in that event, that Kelly might file a separate[5] suit for bad faith settlement negotiations against Allstate (cause 5 above).[6] The agreement even provided that if Kelly ultimately proved such bad faith, then Allstate would be given credit against the "excess over" judgment for the $50,000.[7] Upon learning of this settlement agreement, the trial court considered that it mooted the issues in the case and, on motion, dismissed *908 the action.[8] Kelly appeals contending that the amount of his damages resulting from the vehicle collision was in controversy between the parties (which under comparative negligence theory also includes issues as to the relative negligence of Kelly and Williams' decedent) and was not disposed of by the settlement agreement. Since his settlement reserved the right to pursue any excess over policy limits judgment against Allstate (cause 5 above), and in order to do that he must first recover judgment against Williams and Allstate in excess of the policy limits, the trial court's dismissal denied him that right and thwarted the intent of his settlement agreement.
The majority's interpretation of this settlement agreement is not only contrary to its obvious purposes and the intent of the parties but paves the way for unfair negotiation tactics[9] in future cases. Assuming, for purposes of argument, that Kelly has a valid claim against Allstate for its bad faith refusal to promptly settle, the settlement agreement, as construed by the majority, is devastatingly deceptive and sets a trap for unwary plaintiffs' counsel. The agreement repeatedly protects Kelly's right to proceed in a separate action against Allstate on a bad faith claim.[10] However, Kelly's future claim is predicated on his ultimately proving in this action that his damages actually exceeded the insurance coverage. Thus, it was carefully provided by the agreement that Kelly did not have to execute his Satisfaction of Judgment to Williams until after the conclusion of the instant case (both at trial and appeal) or, if the subsequent bad faith action were pursued, until after the conclusion of the subsequent action.[11] Kelly's partial settlement specifically provided that "the agreement to satisfy judgment ... will not operate to prevent or hinder [Kelly] from filing a legal action against Allstate for alleged bad faith." Notwithstanding the clear wording of these various provisions, the majority holds that the agreement precluded any actual or potential exposure to liability on the part of Williams and precluded Kelly from obtaining the needed judgment. Therefore Kelly has lost his potential cause of action against Allstate for bad faith. Thus, merely because Kelly settled his negligence tort claim against Williams (cause 1 above), and Allstate's contractual duties to him (cause 3 above), the majority precludes Kelly from pursuing Allstate's ultimate liability in tort for bad faith (cause 5 above). This agreement need not, and should not, be given this construction.
In Critz v. Farmers Insurance Group, 230 Cal. App.2d 788, 41 Cal. Rptr. 401, 12 A.L.R.3d 1142 (3rd Dist.Ct.App. 1964) the appellant was injured in an auto accident caused by an insured of the appellee. Prior to any *909 suit being filed, the appellant offered to settle for the policy limits; the appellee rejected this offer. The appellant then went directly to the insured and made a settlement agreement whereby the insured assigned to the appellant any cause of action for bad faith the insured might ultimately have against the insurance company and the appellant agreed to hold the insured free and harmless from all efforts to collect his contemplated judgment for damages from the insured personally. After this agreement was entered, the appellant filed suit against the insured and ultimately won a jury verdict far in excess of the policy limits. The appellant then filed suit against the insurance company based on the insured's assignment of the bad faith claim. The trial court dismissed the case, holding the assignment was void. However, the appellate court ultimately held that the assignment was not void just because it was made before the institution of an action and the obtaining of a judgment against the insured. Thus, under Critz, an agreement that protects an insured from any ultimate liability does not foreclose the injured party from establishing his damages in a suit against the insured and does not vitiate the insurance company's ultimate liability for bad faith settlement negotiations. This holding applies here. If the majority distinguishes Critz on the basis that that case involved a "covenant not to execute" while the instant case involves a "release," then the distinction is not only overly technical but is fallacious.[12] In the instant case, Kelly only agreed to execute a "Satisfaction of Judgment" in favor of the insured at some point after the conclusion of his case against her. In this respect the instant agreement was more in the nature of a "covenant not to execute" than a "release." The agreements in Critz and in the instant case both guaranteed that the insureds would ultimately only incur liability up to the amount of their respective insurance policies; yet Critz was allowed to establish her damages and pursue a subsequent bad faith claim against the insurer and Kelly is not.
If the majority distinguishes Critz on the basis that Critz involved an assignment (which is no longer necessary in Florida), and the instant case does not, then it is a meaningless distinction and the above analysis still applies. The majority candidly admits that an assignment of the insured's cause of action is no longer necessary in Florida since the supreme court's decision in Thompson v. Commercial Union Insurance Company of New York. However, prior to Thompson, the only two bases upon which a victim/judgment creditor could proceed directly against an insurer on a claim of "bad faith" were: (1) where the insurance contract itself expressly provided for this procedure,[13] or (2) where the victim/judgment creditor obtained an assignment of the insured/judgment debtor's cause of action against its insurer.[14] The majority focuses on the fact that Kelly ultimately releases Williams from any liability for the excess judgment and holds that this forecloses his potential bad faith claim. Yet prior to Thompson, such release clauses were routinely *910 given to the judgment debtor as consideration for the agreement. See, e.g., Nationwide Mutual Insurance Company v. McNulty, 229 So.2d 585 (Fla. 1969); accord Liberty Mutual Insurance Company v. Davis, 412 F.2d 475, 479 (5th Cir.1969) (Florida diversity action). The assignment involved in McNulty is especially apropos. Prior to the supreme court affirmance, the Third District Court of Appeal stated:
The written assignment discloses that in return for the assignment of the cause of action to him, McNulty [the victim] agreed that at the expiration of six months (if suit were not brought thereon by him) or "upon the conclusion" of legal proceedings if brought thereon by him against Nationwide, he would "satisfy all amounts of the aforesaid judgments in excess of the coverage afforded."
McNulty v. Nationwide Mutual Insurance Company, 221 So.2d 208, 210 (Fla.3d DCA), cert. discharged, 229 So.2d 585 (Fla. 1969). The above clause is legally indistinguishable from the instant agreement, yet the supreme court did not view the clause as barring further action but the majority does.
Since I cannot agree with the necessity for the harsh result reached in the instant case or the law and pitfalls being established for litigants and counsel in the future, I respectfully dissent.
NOTES
[1] The stipulation encompassed the liability of Grace B. Williams individually, and as the personal representative of Larry Arthur Williams (her deceased husband) and his estate.
[2] See American Fire & Cas. Co. v. Davis, 146 So.2d 615 (Fla. 1st DCA 1962).
[3] Thompson v. Commercial Union Ins. Co. of N.Y., 250 So.2d 259 (Fla. 1971).
[4] Florida East Coast Railway Co. v. Thompson, 93 Fla. 30, 111 So. 525 (1927).
[5] Dorson v. Dorson, 393 So.2d 632 (Fla. 4th DCA 1981).
[1] While the refusal of an injured party's offer to settle for an amount equal to or less than the policy limits is usually asserted as evidence of the insurance company's "bad faith" in settlement negotiation, it is not the only evidence admissible. In certain circumstances, the insurance company can be liable on a bad faith claim even if the injured party has failed to ever make an offer of settlement for an amount covered by the insurance policy. See, e.g., General Accident Fire and Life Assurance Corp. Ltd. v. American Cas. Co., 390 So.2d 761 (Fla.3d DCA 1980), review denied, 399 So.2d 1142 (Fla. 1981); Thomas v. Western World Ins. Co., 343 So.2d 1298 (Fla.2d DCA), cert. dismissed, 348 So.2d 955 (Fla. 1977). Cf. Florida Bar News, August 25, 1981, at 3 (proposed revised jury instructions for bad faith claims so as to cover situation where no offer to settle was proposed); Florida Bar News, November 25, 1981, at 7 (clarification of previously proposed instructions).
[2] The normal scenario in an "excess judgment" situation starts with the injured party, as plaintiff, bringing suit against the alleged tortfeasor and his insurer, as co-defendants. If the action results in a judgment for plaintiff in excess of the tortfeasor's insurance coverage, the defendant tortfeasor is potentially accountable for such excess. When the insurance company has acted in "bad faith" during prejudgment settlement negotiations, the original defendant tortfeasor has a cause of action against the company for the amount of the original judgment in "excess" of the policy limits. American Fire and Cas. Co. v. Davis, 146 So.2d 615 (Fla. 1st DCA 1962) (cause 4 above).

Often the defendant tortfeasor is judgment proof and the defendant's cause of action back against the insurance company is of more value to the original plaintiff (judgment creditor by now) than the original judgment. Therefore, in the past, releases were often given in exchange for an assignment of the cause of action. See, e.g., Nationwide Mut. Ins. Co. v. McNulty, Co., 229 So.2d 585 (Fla. 1969); Selfridge v. Allstate Ins. Co., 219 So.2d 127 (Fla. 4th DCA 1969). However, an assignment is no longer necessary since the judgment creditor is now allowed to assert a cause of action for bad faith settlement tactics under third-party beneficiary concepts. Thompson v. Commercial Union Ins. Co. of N.Y., 250 So.2d 259 (Fla. 1971).
[3] It should be noted that a belated offer to settle does not necessarily foreclose a claim of bad faith negotiation on the insurer's part and therefore an insurer can still be ultimately held liable for an excess judgment notwithstanding its late-hour attempt to settle for the policy limits. See, e.g., Boston Old Colony Ins. Co. v. Gutierrez, 360 So.2d 464 (Fla.3d DCA 1978), quashed on other grounds, 386 So.2d 783 (Fla. 1980); accord, Hayes Bros., Inc. v. Economy Fire and Cas. Co., 634 F.2d 1119 (8th Cir.1980); Critz v. Farmers Ins. Group, 230 Cal. App.2d 788, 41 Cal. Rptr. 401, 12 A.L.R.3d 1142 (3d Dist.Ct.App. 1964).
[4] Kelly's potential cause of action for Allstate's alleged bad faith does not mature until a judgment in excess of the policy limits is entered in the negligence action. 7C Appleman, Insurance Law and Practice, § 4712 (Berdel ed. 1979). Although Florida courts allow subsequent litigation of a bad faith claim in the same case as the negligence claim, see note 5 infra, see, e.g., Cotton States Mut. Ins. Co. v. Trevethan, 390 So.2d 724 (Fla. 5th DCA), review denied, 392 So.2d 1373 (Fla. 1980), there is no bar to bringing a separate cause of action for bad faith after entry of final judgment against the insurer for the limits of the policy. See, e.g., Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980). Therefore, by agreeing to limit Allstate's liability in the negligence action to the limits of the policy Kelly did not thereby limit Allstate's potential liability for payment of an "excess over" judgment and did not moot the issue of Kelly's damages in the negligence action.
[5] Although the bad faith claim can be pursued in a separate cause of action, it is not necessarily required to be raised in this manner. The question usually arises in the original negligence action after a judgment in excess of the policy limits is entered against both the defendant insured and the defendant insurance company. The insurance company then files a post-judgment motion to limit the judgment against it to the amount of the policy limits. When the policy limits are in question, the Second District Court of Appeal requires the insurance company to raise the issue of limitation by pleading in the nature of a cross-claim served on the other parties (the insured and plaintiff/judgment creditor). Williams v. Banning, 259 So.2d 725 (Fla.2d DCA 1972). This procedure has also been used to raise the issue of bad faith settlement negotiating on an insurance company's part. State ex rel. Unigard Ins. Co. v. Durrance, 276 So.2d 112 (Fla.2d DCA), cert. denied, 281 So.2d 505 (Fla. 1973) (where appellant insurance company brought writ of prohibition to stay any lower court action on cross-claim of bad faith pending outcome of appeal from judgment, appellate court denied a writ and relinquished jurisdiction for limited purpose of deciding bad faith issue). Neither the Third nor the Fourth District Courts of Appeal require the Williams cross-claim procedure when there is no question of the insurance company's potential liability for bad faith negotiations. See, e.g., Allstate Ins. Co. v. Shilling, 374 So.2d 611 (Fla. 4th DCA 1979); Quinn v. Millard, 358 So.2d 1378 (Fla.3d DCA 1978); Soler v. Kukula, 297 So.2d 600 (Fla.3d DCA 1974); Stella v. Craine, 281 So.2d 584 (Fla. 4th DCA 1973), cert. denied, 289 So.2d 731 (Fla. 1974). However, where allegations of bad faith negotiations exist, the Third District Court has required the insurance company to file a Williams cross-claim, and thus has impliedly allowed the issue of bad faith settlement negotiations to be raised in the original negligence action. Kenilworth Ins. Co. v. Pizarro, 369 So.2d 995 (Fla.3d DCA 1979). Although in State ex rel. American Home Ins. Co. v. Sealy, 355 So.2d 822 (Fla. 4th DCA), cert. denied, 361 So.2d 835 (Fla. 1978), the Fourth District issued a writ of prohibition prohibiting the trial court from proceeding on the post-judgment cross-claim of bad faith during the pendency of the appeal from the judgment (in disagreement with Durrance), it did not hold the cross-claim was improper in that action and presumably the claim was proceeded with after the appeal was rendered.

These cases illustrate that the claim for bad faith can be pursued in the original negligence action, and therefore Kelly's present cause of action still has disputed factual issues of damages and bad faith. Notwithstanding Kelly's choice to proceed on the bad faith claim in a separate cause of action, the above cases still illustrate that a judgment in excess of the policy limits is a prerequisite for any future allegation of bad faith negotiating. See also 7C Appleman, Insurance Law and Practice, § 4712 (Berdel ed. 1979).
[6] Thompson v. Commercial Union Ins. Co. of N.Y., 250 So.2d 259 (Fla. 1971).
[7] Of course, before the settlement Kelly was entitled to collect any excess over judgment from Williams without proof of any bad faith on anyone's part. By his agreement Kelly gave up this right in exchange for the right to an immediate recovery of $50,000, reserving only his right to assert a future claim of bad faith negotiating on the part of Allstate. Such a settlement is not uncommon and agreements of this type have been made even before the negligence action was filed. See Critz v. Farmers Ins. Group, 230 Cal. App.2d 788, 41 Cal. Rptr. 401, 12 A.L.R.3d 1142 (3d Dist.Ct.App. 1964).
[8] This ruling came as a windfall to appellees. After the stipulated partial settlement dated June 22, 1979, the action remained pending until August 10, 1979, when the trial judge, sua sponte, ordered a supplemental pretrial conference specifically to determine "the legal effect and consequences of the stipulation dated June 22, 1979, and filed herein, and whether or not any justiciable issue remains for disposition by this court. At the time of said hearing, this court will entertain any and all motions heretofore or hereafter filed in this cause by any party." No motion was then pending, but appellees' counsel took the hint and on August 24, 1979, filed a motion to dismiss, which was granted. The point is that counsel did not consider that the stipulation disposed of the pending action and moved for dismissal only after prompting by the trial judge.
[9] Nothing herein is intended to suggest that appellees' counsel acted other than in keeping with their good reputation as able, careful and ethical attorneys. See footnote 8, supra. The stipulation/settlement in this case was suggested and drawn by plaintiff's counsel. However, the unarticulated effect of the majority's opinion is to hold that a plaintiff cannot partially settle causes of action 1 and 3 without necessarily settling cause of action 5. This harsh result denies the parties the ability to negotiate a partial settlement. It precludes such a settlement notwithstanding each party's belief it is in their own best interest to enter such an agreement. If this is the intent of the majority's opinion, they should forthrightly say so, so that counsel may be clearly aware of this legal limitation.
[10] The nine paragraph agreement refers to the potential future suit for "bad faith" no less than nine separate times.
[11] How could Kelly be expected to execute a "Satisfaction of Judgment" until after he had a judgment?
[12] Historically, the only true practical distinction between a covenant not to sue and a release was its effect upon a joint tortfeasor, see 10 Fla.Jur.2d Compromise, Accord, and Release § 23 (1979), and even this distinction has been statutorily abrogated. See § 768.041, Fla. Stat. (1979). However, this does point up a fallacy in the majority's reasoning. While the insured and the insurer are co-defendants in the case, they are not joint tortfeasors. Appellant's claim against the insured is based on general negligence theory; however, appellant's remaining claim against the insurance company is a completely separate tort of bad faith settlement negotiation. With respect to that cause of action the insurer is not a joint tortfeasor with the insured.
[13] Compare Auto Mut. Indem. Co. v. Shaw, 134 Fla. 815, 184 So. 852 (1938) (insurance clause provided for direct suit by victim) with Canal Ins. Co. of Greenville, S.C. v. Sturgis, 122 So.2d 313 (Fla. 1959) (absent insurance provision, direct suit by victim was barred).
[14] See, e.g., Nationwide Mut. Ins. Co. v. McNulty, 229 So.2d 585 (Fla. 1969); Selfridge v. Allstate Ins. Co., 219 So.2d 127 (Fla. 4th DCA 1969). Accord, Kuklis v. United Servs. Auto. Ass'n, 442 F.2d 1045 (5th Cir.1971) (interpreting pre-Thompson Florida law). See generally 12 A.L.R.3d 1158 (1967) (assignability of insured's right to recover over against liability insurer for rejection of settlement offer).