444 So.2d 1041 (1984)
FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant,
v.
James L. COPE, As Personal Representative of the Estate of Anna L. Cope, Deceased, Appellee.
No. 82-1706.
District Court of Appeal of Florida, Second District.
January 20, 1984.
*1042 Jonathan L. Alpert of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
Robert W. Holman of Hammond & Holman, Pinellas Park, and G. Robert Schultz of St. Petersburg, for appellee.
OTT, Chief Judge.
The trial court found that appellant had acted in bad faith by failing to settle a claim made against its insured. Judgment in excess of appellant's policy limits was entered against appellant in favor of the claimant. Appellant raises several points on appeal. Those which merit discussion are (1) whether a certain release and satisfaction specifically released appellant, (2) whether appellant as excess insurer could be guilty of bad faith, and (3) whether the complete discharge of appellant's insured bars the claimant's bad faith action against appellant.
On March 30, 1978, appellant's insured (Brosnan) was, with permission, operating *1043 an automobile owned by Gehan and in which Gehan was a passenger. Brosnan ran a stop sign and collided with a vehicle driven by appellee James L. Cope. Appellee's wife, Anna L. Cope, was a passenger in the car. Mrs. Cope was killed and Mr. Cope was injured. Brosnan was charged with driving while under the influence (alcohol) and vehicular homicide.
Appellant had issued a $10,000/20,000 liability policy to Brosnan. On April 26, 1978, appellee's attorney wrote to Brosnan informing Brosnan of the attorney's representation of appellee. Brosnan turned this letter over to an attorney representing him in the DWI/homicide case. On May 2, 1978, she forwarded the letter to appellant's adjuster with her request that the case be settled.
By letter dated May 16, 1978, appellant's adjuster advised Brosnan it was "continuing to handle" the claim. The letter informed Brosnan that it was foreseeable that the damages claimed would exceed Brosnan's policy limits. "The company will, of course, attempt to adjust the loss within the limits and defend any suit and [sic] it's [sic] expense as provided in the policy." [Emphasis supplied.] Brosnan testified that he never again heard from the adjuster or from appellant.
On September 27, 1978, appellee's attorney wrote to the adjuster requesting that all future communications regarding the case be directed to the attorney. A second letter followed on October 9, 1978, in which appellee's attorney forwarded all medical reports and bills. Appellee's attorney demanded the full policy limits and expressed his intent to file suit if no response was received within seven days. The adjuster responded on October 16, 1978, admitting that the severity of the injuries warranted payment of the policy limits, however, the adjuster would first require appellee to reach a settlement with Gehan, who had also sustained injuries.
Meanwhile, appellee had attempted to negotiate with Hartford with whom Gehan had a $10,000/20,000 liability policy. No agreement was reached.
Negotiations having failed to produce a settlement with either insurer, appellee filed suit on November 22, 1978, against Brosnan, appellant, Gehan, and Hartford for the wrongful death of his wife and for his own personal injuries. Appellee's individual claim for personal injuries was settled, appellant and Hartford each paying $10,000. Jury trial of the wrongful death action resulted in a $100,000 judgment for appellee. Appellant and Hartford immediately tendered their respective policy limits of $10,000 each. Thereafter, appellee filed a complaint for excess judgment against Hartford,[1] alleging that Hartford had acted in bad faith by failing to negotiate a settlement. This suit was settled for $50,000. Appellee executed a release and a satisfaction of judgment in connection therewith which discharged Hartford, its insured (Gehan), and its omnibus insured (Brosnan) from any further liability on the $100,000 wrongful death judgment.
Appellee next sued appellant for the $30,000 balance of the original $100,000 judgment. The complaint alleged that appellant negligently and in bad faith refused to negotiate a settlement of appellee's claim. Appellee prevailed, and judgment for $30,000 was entered against appellant.
At pretrial conference, appellant moved to amend its affirmative defenses to allege that the release executed pursuant to the settlement appellee reached in his bad faith suit against Hartford also released appellant. It is not clear from the transcript that the trial court specifically granted this motion. However, the final judgment contains the finding that the release and the satisfaction of judgment were not intended to benefit appellant and did not relieve appellant of liability. Obviously, the trial court considered and rejected *1044 this additional defense asserted by appellant, and we affirm this finding. Paragraphs 1 and 2 of the release specifically "release and forever discharge" Gehan, Hartford, and Brosnan. Appellant was not named in the releasing claim nor did it contribute any money toward securing the release or the satisfaction of judgment. Appellant argues that general language in paragraph 9 of the release[2] was effective to discharge it even though not specifically named. This is a question of fact and the trial court's finding that appellant was not released is supported by substantial competent evidence. Cf. Hurt v. Leatherby Insurance Co., 380 So.2d 432 (Fla. 1980).
Appellant argues that a cause of action for bad faith can be maintained only when an insured is legally obligated to pay a judgment in excess of his policy limits. Because Brosnan was completely safeguarded by the release and the satisfaction executed by appellee, appellant contends that the bad faith cause of action no longer exists. Kelly v. Williams, 411 So.2d 902 (Fla. 5th DCA), petition for review denied, 419 So.2d 1198 (Fla. 1982), is cited by appellant in support of its contention. In Kelly, a stipulation completely safeguarded an insured tortfeasor from liability in excess of his liability insurance policy limits. Even though the injured party specifically reserved the right in the stipulation to pursue a bad faith claim against the tortfeasor's insurer, the fifth district held that such an action was barred. "The stipulation completely safeguarded the insured, and therefore it completely discharged the insurer's duty to its insured." 411 So.2d at 904.
We disagree with Kelly and hold that appellant remained liable. Florida law recognizes that an injured party/judgment creditor may maintain suit directly against a tortfeasor's liability insurer for judgment in excess of the policy limits based upon bad faith of the insurer in the conduct or the handling of the original claim. Thompson v. Commercial Union Insurance Co. of New York, 250 So.2d 259 (Fla. 1971). Hence, it is a separate and distinct cause of action. See Kelly, 411 So.2d at 905 (Cowart, J., dissenting). If Brosnan had satisfied the judgment out of his own pocket and obtained a release and satisfaction of judgment, absent a prohibition in the policy, appellant would not have been relieved of liability to Brosnan. Cf. Aetna Casualty & Surety Co. v. Beane, 385 So.2d 1087 (Fla. 4th DCA 1980). Similarly, we think that where the insurer's bad faith is a separate tort, as here, the injured party may release the tortfeasor from personal liability on the judgment without discharging the insurer from liability for its independent tort. Indeed, Hartford had a duty to both its insureds, Gehan and Brosnan, to seek their discharge from further personal liability as a part of the negotiated settlement of the bad faith claim against Hartford. However, this did not affect appellant's liability for its own bad faith.
Appellant points out that it was only the excess or secondary insurer of Brosnan in this case. The policy of insurance issued by appellant to Brosnan contained a clause dealing with "other insurance." It provided, "... any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance." Gehan's insurance policy covered Brosnan as a user of the insured automobile, therefore, Hartford was primary insurer.[3] Appellant takes the position that it had no opportunity to settle because Hartford, as primary insurer, was in control of Brosnan's defense. In support of its position, *1045 appellant relies on General Accident Fire & Life Assurance Corp. v. American Casualty Co., 390 So.2d 761 (Fla. 3d DCA 1980), petition for review denied, 399 So.2d 1142 (Fla. 1981).
General Accident is distinguishable from the instant case in several respects. First, in General Accident, American Casualty was a true excess insurer; it had issued an excess liability insurance policy. Appellant, on the other hand, was only an excess insurer because Brosnan occupied a non-owned vehicle. In many other situations, appellant would be the primary insurer. Second, appellant represented to Brosnan in the May 16, 1978, letter that it would "handle" the matter, attempt to settle within the policy limits, and defend any suit. In the instant case, there was no question that Brosnan was liable and that the injuries sustained were likely to exceed all available insurance. Under these facts we hold that not only was appellant permitted to negotiate a settlement, but also it had a duty to defend Brosnan or attempt a settlement. We are not holding that appellant would ever be obligated to offer or pay more than its policy limits to protect itself from a potential bad faith claim.
We find support for our holding from other jurisdictions. Aetna Casualty and Surety Co. v. Buckeye Union Casualty Co., 157 Ohio St. 385, 105 N.E.2d 568 (Ohio 1952), arose out of an automobile accident. A policy issued by Aetna to the driver/tortfeasor provided that it "shall be excess insurance over any other valid and collectible insurance available to the insured." 105 N.E.2d at 571. Buckeye, the primary insurer, denied coverage. After demand upon and notice to Buckeye, Aetna settled with the claimant. Aetna then sued Buckeye to recover the amount paid to the claimant. The question before the Ohio Supreme Court was whether Aetna in making the settlement was a mere volunteer without right of recovery from Buckeye. The court held that Aetna had an interest to protect and a legal obligation to pay. As long as Buckeye refused to participate in negotiations or defend the action, there was no "other valid or collectible insurance." Also, in Fireman's Fund Insurance Co. v. Security Insurance Co. of Hartford, 367 A.2d 864 (N.J. 1976), an excess insurer was permitted to assist the insured in settling an action directly with the injured claimant when the primary insurer unreasonably refused to do so.[4]
Finally, appellant argues that even if it could have been guilty of bad faith as excess insurer, the evidence presented in this cause was insufficient to support a finding of bad faith. Appellant further asserts that the lower court found that appellant could have or should have settled the claim between October 9, 1978, and November 22, 1978. We disagree that the lower court's finding was limited to that time span. We hold that there was substantial competent evidence to support a finding that appellant acted in bad faith in failing to negotiate or settle the original claim against Brosnan within its policy limits.
From the evidence it is apparent that there was never any basis for contending that Brosnan was not liable for Mrs. Cope's death. Appellant never denied liability. On the contrary, the May 16, 1978, letter from the adjuster to Brosnan conceded that Brosnan was liable, that the damages would exceed coverage, and that settlement was desirable. In accord with this letter was a June 7, 1978, interoffice communication of the adjuster admitting that appellant would "undoubtedly" have to pay its policy limits. This communication concluded, "we will be in constant touch with Hartford and [appellee's attorney] regarding settlement of the Copes' claim." Contrary to this statement, the record contains no evidence that appellant ever initiated contact with appellee or his attorney. Also, it is unrefuted that, other than the initial letter from the adjuster, appellant *1046 made no attempt to contact Brosnan or advise him of settlement negotiations. Appellant was obligated "to advise the insured of settlement opportunities, to advise of the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." Boston Old Colony Insurance Co. v. Gutierrez, 386 So.2d 783, 785 (Fla.), cert. denied, 450 U.S. 922, 101 S.Ct. 1372, 67 L.Ed.2d 350 (1980).
When faced with the October 9, 1978, offer to settle the admittedly serious and legitimate claim, appellant was willing to tender its policy limits only after a settlement was reached with Gehan. Gehan had suffered personal injuries but had made no attempt to assert a claim against Brosnan or as an omnibus insured under appellant's policy. There is no evidence that appellant ever contacted Gehan concerning her injuries. In Harmon v. State Farm Mutual Automobile Insurance Co., 232 So.2d 206 (Fla. 2d DCA 1970), this court held that where multiple claims arise out of one accident an insurer has the right to settle with some claimants regardless of whether such action depletes or even exhausts the policy limits to the extent that other claimants are left without recourse against the insurer. The Harmon court refused to distinguish between claims of insureds under insurance policies and mere third-party claims against insurers. Hence, Gehan's potential claim did not bar settlement with appellee.
We AFFIRM the decision of the trial court and certify that our decision is in direct conflict with Kelly v. Williams, 411 So.2d 902 (Fla. 5th DCA), petition for review denied, 419 So.2d 1198 (Fla. 1982).
DANAHY, J., concurs.
LEHAN, J., concurs with opinion.
LEHAN, Judge, concurs with opinion.
I concur with the majority opinion because there is an especially stringent requirement that a releasor's intent to release a party who is only generally described in a release of the type involved here be clearly manifested. As Hurt v. Leatherby Insurance Co., cited in the majority opinion, says:
[I]t is important that the releasor's intent to give a general release be clearly expressed... . We feel that the manifestation of the intent must be more explicit than signing a printed form which happened to contain broad, general release language in addition to providing spaces for the specially discharged parties.
Id. at 433-34. The release in the case before us is not on a printed form. But its paragraphs 1 and 2, which specifically release Hartford, Gehan and Brosnan, neither name nor refer to appellant. Appellant must rely upon paragraph 9, quoted in the majority opinion, the language of which appears to be the type of "boiler plate" language referred to in Hurt. Hurt explains the historical origin of such generalized language as not necessarily connoting the intent of the parties to the release.
Accordingly, I understand our holding to include the following point: in a case like this, general language, which refers to "insurers" but does not name the insurer, does not in itself constitute a sufficiently clear manifestation of intent to require the release of the insurer when other parties released are specifically named and there is other evidence contrary to that general language. See also Avery v. Owen, 404 So.2d 754 (Fla. 3d DCA 1981).
The record establishes beyond doubt that the parties to the release did not intend to release appellant. Therefore, elements of a reformation action by reason of mutual mistake exist. But under the circumstances of this case and consistent with Hurt, there is and should be no formalistic, technical requirement that a reformation action be a condition precedent to relief. See Alexander v. Kirkham, 365 So.2d 1038 (Fla. 3d DCA 1979), which involved reformation of a release which had mistakenly released an insurer who had paid nothing for the release.
NOTES
[1] A judgment creditor may maintain suit directly against a tortfeasor's liability insurer for recovery of judgment in excess of policy limits. Thompson v. Commercial Union Insurance Co. of New York, 250 So.2d 259 (Fla. 1971).
[2] That paragraph provided:

9. That I hereby covenant with each of the parties hereby released, their heirs, executors, administrators, successors, representatives, assigns, principals, agents, servants, insurers and employees for or on account of the matters described herein that this settlement is made in good faith, and that these presents may be pleaded as a defense to any action or other proceeding which may be brought or instituted by me or on behalf of ANNA L. COPE's estate against them in breach of this covenant.
[3] If judgment against a common insured is entered, a primary insurer is obligated to exhaust its policy limits before a secondary is required to contribute toward payment of the judgment.
[4] In addition, see generally 7C J. Appleman, Insurance Law and Practice (Berdal ed.), § 4922 (1979); Couch on Insurance 2d (Rev. ed.), § 51:27 (1982); 5 Long, Law of Liability Insurance, § 5.63 (1981).