473 So.2d 756 (1985)
FLORIDA PHYSICIANS Insurance Reciprocal and Professional Insurance Management Company, Appellants,
v.
Mario H. Avila, M.D., Appellee.
Nos. 84-422, 84-574.
District Court of Appeal of Florida, Fourth District.
July 10, 1985.
Rehearing Denied August 30, 1985.
John Edward Herndon, Jr. of Thornton and Herndon, Miami, for appellants.
Marcia E. Levine of Fazio, Dawson & DiSalvo, Fort Lauderdale, for appellee.
HERSEY, Chief Judge.
Insurer and its management company appeal from a judgment in favor of appellee, insured, following a jury verdict based upon insurer's bad faith in settlement negotiations by virtue of its failure to offer the policy limits to settle a malpractice claim asserted against the insured.
On March 27, 1980, the estate of Doneva Reeves filed a medical malpractice action against Dr. Avila, four other doctors, and Plantation General Hospital. Dr. Avila was insured against malpractice claims by the defendant, Florida Physicians Insurance Reciprocal, in the amount of $500,000. Defendant Professional Insurance Management Company is the Reciprocal's management company. Dr. Avila had no excess insurance.
The insurer retained an attorney to represent Dr. Avila in the Reeves lawsuit. Settlement negotiations commenced with the plaintiffs demanding $1,000,000. Caduceus, the primary carrier for the codefendant doctors, offered its limits of $300,000 and the appellants first offered $100,000 and then $150,000 on behalf of Dr. Avila. The codefendants' excess carrier, the Patient's Compensation Fund, demanded that the appellants offer their policy limits, which they refused to do.
Just prior to trial, in February 1982, the plaintiff made a settlement demand of $2,000,000. The Fund offered $1,750,000, which included $250,000 offered by the appellants *757 who declined to offer the remaining $250,000 policy limits, which would have settled the case. In order to effect a settlement, Parthenon Insurance Company, the hospital's carrier, "loaned" Dr. Avila the additional $250,000. The agreement between Dr. Avila and Parthenon provided, inter alia, that the doctor assigned to Parthenon any claim for reimbursement he had against the appellants. (This claim was subsequently reassigned to Dr. Avila.) He was personally liable under the agreement to repay Parthenon only upon the happening of both of the following two events:
(i) A failure of recovery in the claims to be asserted against Florida Physicians Insurance Reciprocal or Professional Insurance Management Company, after all due diligence in the prosecution thereof; and
(ii) The co-defendant surgeons' becoming liable for repayment to "Parthenon" of sums owed and promised on their behalf to the plaintiff by the Florida Patient's Compensation Fund and guaranteed to be paid on or before May 1st, 1982 by "Parthenon" in accordance with that agreement reached on February 9, 1982 in the offices of Conrad, Scherer & James, and reduced to stenographic transcript by Lauderdale Reporting Service.
The second contingency never occurred, since the Fund paid its part of the settlement prior to May 1, 1982. Thus, Dr. Avila was not required to repay the "loan."
Dr. Avila subsequently sued his insurance carriers to recover the money he "borrowed," alleging bad faith in their failure to settle the case within the policy limits. After a jury trial, the trial court entered judgment for Dr. Avila in the amount of $250,000 and awarded him $115,000 in attorneys' fees. The defendants' motions for judgment notwithstanding the verdict and for new trial were denied and this appeal followed.
Where an insurer fails to settle a claim within policy limits and an excess judgment is subsequently entered against the insured, it is undisputed that the insured may sue the insurer for negligence or bad faith in failing to settle. American Fire and Casualty Co. v. Davis, 146 So.2d 615 (Fla. 1st DCA 1962). More specifically, an insurer who assumes the defense of the insured incurs a duty to act in good faith and with due regard to the interests of the insured. The extent of that duty and some of the consequences of its breach are explained in Boston Old Colony Insurance Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980), cert. denied, 450 U.S. 922, 101 S.Ct. 1372, 67 L.Ed.2d 350 (1981). This duty includes an obligation to settle (within or at policy limits) "where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." Id. at 785 (citations omitted). Breach of this duty may give rise to a cause of action for bad faith against the insurer. A breach occurs where the insurer's wrongful refusal to settle exposes the insured to liability in an amount in excess of the policy limits.
The easy case for application of these rules occurs when a judgment in excess of policy limits is entered against the insured where the insurer had either a clear duty to defend and refused or, having undertaken the defense, wrongfully refused to accept an offer of settlement within the policy limits.
The more difficult case (one such as ours) is described by Judge Grimes in Steil v. Fla. Physicians' Insurance Reciprocal, 448 So.2d 589, 591 (Fla. 2d DCA 1984):
Steil relies upon the general rule that if an insurer wrongfully refuses to defend, an insured is entitled to make a reasonable settlement without requiring the suit to be carried to judgment even though the policy purports to avoid liability for a settlement made without the insurer's consent. Phoenix Assurance Co. v. Hendry Corp., 267 So.2d 92 (Fla. 2d DCA 1972), cert. discharged, 277 So.2d 532 (Fla. 1973); Cunningham v. Austin Ford, Inc., 189 So.2d 661 (Fla. 3d DCA 1966), cert. dismissed, 198 So.2d 829 (Fla. 1967). The carrier responds, however, by pointing out that Walker has neither paid nor become obligated to pay any monies in satisfaction of Steil's *758 claim. The carrier argues that since its policy obligations are predicated upon Walker's liability, it cannot be held responsible when Walker has been discharged from liability without making any payment.
There is no Florida case in point, although the Fifth Circuit Court of Appeals in Coblentz v. American Surety Co., 416 F.2d 1059 (5th Cir.1969), endeavored to apply Florida law to a rather similar factual situation. In that case the insured stipulated with the claimant for entry of a $50,000 judgment against him after the insurance carrier withdrew its defense. Despite the fact that it was later determined that coverage existed, the trial court directed a verdict for the insurer because the stipulated judgment provided that it could only be satisfied from the insured's liability policy. The court of appeals reversed and ruled that by virtue of the insurer having elected to leave the insured to his own defenses, it could not later complain about the form of the judgment. Since there was no evidence that the stipulated judgment was tainted by fraud or collusion, the court directed the entry of a judgment against the insurer for $50,000.
In addition to Coblentz, a slim majority of other jurisdictions permit [sic] an injured plaintiff to recover from the insurer despite the existence of a covenant between the plaintiff and the insured to seek relief only from the insurer. State Farm Mutual Automobile Insurance Co. v. Paynter, 122 Ariz. 198, 593 P.2d 948 (Ariz. Ct. App. 1979); ... .
One difference between Steil and the present case is that Steil involved a refusal to defend whereas we have here a refusal to settle. Another difference is that in Steil the defendant doctor had been released from liability, so that the question arises whether he had been damaged. He assigned his claim for bad faith to Steil who therefore stands in his shoes in that regard. Appellee, Avila, the insured here (rather than an assignee of the insured), was able to settle the malpractice claim without monetary damage by using "borrowed" money which, as it turns out, he is not obligated to repay. Assuming the insurer wrongfully refused to settle, the question arises, as in Steil, of actual damages.
A result similar to Steil was reached in Fidelity and Casualty Co. of New York v. Cope, 444 So.2d 1041 (Fla. 2d DCA 1984), which was taken to the supreme court based upon a conflict with the fifth district's decision in Kelly v. Williams, 411 So.2d 902 (Fla. 5th DCA 1982). The supreme court has now decided Cope, 462 So.2d 459 (Fla. 1985), which appears dispositive of the issues here. The court states, at page 460:
The Fifth District Court of Appeal in Kelly v. Williams correctly stated:
The essence of a "bad faith" insurance suit (whether it is brought by the insured or by the injured party standing in his place), is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits)  all of which results in the insured being exposed to an excess judgment.
411 So.2d at 904 (footnote omitted). The district court noted that a stipulation entered in the cause completely released the insured. Because the insured could not be exposed to any loss or damage from the alleged bad faith of the insurer, no cause of action for bad faith remained for anyone.
The opinion also points out that "[a]n essential ingredient to any cause of action is damages." Id. at 461. Continuing:
We hold that if an excess judgment has been satisfied, absent an assignment of that cause of action prior to satisfaction, a third party cannot maintain action for a breach of duty between an insurer and its insured.
Id.
Dr. Avila assigned his bad faith cause of action (assuming he had one) to Parthenon before being released. All other things *759 being equal a suit by Parthenon against appellants would have been appropriate under the escape hatch language in Cope. However, when Avila reacquired the claim, having been released and not personally out-of-pocket, he would appear to fit the mold of the rule of Cope rather than the exception despite the fact that he is the insured rather than an assignee. To hold otherwise would permit an insured, exposed to excess liability, to assign his claim, obtain a release, obtain a reassignment and avoid Cope in his subsequent bad faith lawsuit.
While we leave various questions unanswered we conclude that Cope is sufficiently analogous to the situation in which Dr. Avila finds himself; we therefore reverse and remand for entry of judgment for appellants.
REVERSED and REMANDED.
HURLEY and DELL, JJ., concur.