485 So.2d 453 (1986)
FLORIDA INSURANCE GUARANTY ASSOCIATION, Appellant/Cross-Appellee,
v.
Rose GIORDANO, As Personal Representative of the Estate of Salvatore Giordano, Deceased, Appellee/Cross-Appellant.
No. 84-2384.
District Court of Appeal of Florida, Third District.
March 4, 1986.
Rehearing Denied April 14, 1986.
*454 Marlow, Shofi, Smith, Connell, DeMahy & Valerius and Joseph H. Lowe, Miami, for appellant/cross-appellee.
Feldman & Levy and David L. Magidson, Daniels & Hicks and Barbara Green, Miami, for appellee/cross-appellant.
Before HENDRY, NESBITT and FERGUSON, JJ.
HENDRY, Judge.
Appellant Florida Insurance Guaranty Association (FIGA) contests a final summary judgment entered against it for the sum of $150,000. Appellee Rose Giordano cross-appeals a final summary judgment entered in favor of FIGA on her claims for attorney's fees, prejudgment interest and costs of the first action. We affirm in part and reverse in part.

I
In 1973, Salvatore Giordano died as a result of burns suffered in a gas explosion. His wife, Rose, filed a wrongful death action in 1975 on behalf of his estate against Rego Valve Company (Rego), an Illinois corporation doing business in Florida, who manufactured the gas valve which allegedly caused Mr. Giordano's death. Rego was insured with Reserve Insurance Company, with policy limits of $300,000. Rego also had excess coverage with Employer's Reinsurance Company.
Reserve undertook the defense of Giordano's suit against its insured until May 31, 1979, when Reserve was declared insolvent. The claim was then sent to FIGA pursuant to section 631.57, Florida Statutes (1979). In January, 1980, FIGA learned that the insured was an Illinois corporation. While FIGA was officially listed as the primary carrier for purposes of the lawsuit until July, 1980, FIGA had adopted the position in January, 1980, that pursuant to section 631.57(2), the Illinois Guaranty Fund (IGF), with statutory coverage limits of $150,000, was the "primary" carrier and FIGA, with statutory coverage limits of $300,000, was an "excess" carrier with no obligations owed to the insured. IGF took over the defense of the lawsuit.
Trial on the wrongful death action was set for October 27, 1980. In mid-September, settlement negotiations began between the plaintiff and Rego, IGF and Employer's Reinsurance. FIGA knew of the on-going settlement negotiations and by mid-October, *455 knew that IGF would tender its policy limits of $150,000.[1]
An attorney for FIGA appeared in court on the day of the trial. The other parties announced that they had reached an agreement. The attorney for FIGA, however, stated emphatically that FIGA did not approve of the settlement, did not authorize it and did not agree with the amount of money agreed upon as a stipulated judgment in the case. The parties (not including FIGA) then drafted a settlement agreement in which Rego agreed to the entry of a $525,000 judgment against it. Payments were assessed from IGF ($150,000), Employer's Reinsurance ($225,000) and FIGA ($150,000). Rego assigned its rights against FIGA, including the $150,000 judgment, plus attorney's fees, costs, interest and punitive damages, to Mrs. Giordano. Mrs. Giordano agreed not to execute her judgment against Rego. Rego would not receive a satisfaction of judgment until the judgment was paid in full. After a hearing, at which FIGA was represented, the trial court entered a final judgment adopting the terms of the settlement agreement. Subsequently, the trial court entered a $12,177 cost judgment against the insured (Rego), which was assigned to Mrs. Giordano.
In May, 1981, FIGA notified Mrs. Giordano that it would not make any payment of the judgment. Mrs. Giordano then filed the instant lawsuit asserting 1) her rights, as assignee of Rego, for the enforcement of FIGA's statutory obligations and the judgments entered on the settlement agreement and 2) that FIGA's course of conduct had been willful, wanton, reckless and a denial of due process and equal protection. The latter count was dismissed with prejudice. Both parties moved for summary judgment on Count I. The trial court granted Mrs. Giordano's motion, finding that FIGA had a duty to defend Rego and a duty to pay the settlement. It also held that Mrs. Giordano was not entitled to any attorney's fees or costs. This appeal and cross-appeal ensued.

II
The two sections of Chapter 631, Florida Statutes, which are relevant to our consideration are the following:
631.57 Powers and duties of the association. 
(1) The association shall:
(a) Be obligated to the extent of the covered claims existing:
1. Prior to the adjudication of insolvency and arising within 30 days after the determination of insolvency, ... but such obligation shall include only that amount of each covered claim which is in excess of $100 and is less than $300,000; ...
(b) Be deemed the insurer to the extent of its obligation on the covered claims, and, to such extent, shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent.
631.61 Nonduplication of recovery. 
(2) Any person having a claim which may be recovered under more than one insurance guaranty association or its equivalent shall seek recovery first from the association of the place of residence of the insured, ... Any recovery under this part shall be reduced by the amount of recovery from any other insurance guaranty association or its equivalent.
As these provisions make clear, when Reserve Insurance Company became insolvent, FIGA moved into Reserve's place and "stood in the shoes" of Reserve as if it had not become insolvent. FIGA became obligated to the insured (Rego) up to its policy limit of $300,000 (which was Reserve's policy limit also) and it acquired all of Reserve's *456 rights, duties and obligations to the insured. Because the insured was an Illinois resident, however, and because Illinois has an insurance guaranty association also, the plaintiff and the insured were directed by section 631.61(2), Florida Statutes (1979), to seek payment first from IGF and then the balance from FIGA.
We can find no cogent basis to support FIGA's assertion that because there existed another state insurance guaranty association, FIGA was absolutely relieved of its statutory obligations to the insured. Nothing in the statute provides for that position. The statute clearly states that FIGA shall be deemed the insurer to the extent of its obligations on the covered claims and shall have all rights, duties and obligations of the insolvent insurer. § 631.57(1)(b), Fla. Stat. (1979) (e.s.). Since FIGA did not dispute that the wrongful death action was a "covered claim," then under the statute, FIGA had no discretion as to whether it would defend the insured. Reserve Insurance had been defending the wrongful death action for four years before its insolvency. When FIGA stepped into Reserve's place upon Reserve's insolvency, FIGA was under a statutorily imposed duty to continue the defense of the insured.
Furthermore, it is well settled in Florida that the duty of an insurer to defend its insured is broader than, and distinct from, its duty to pay. Baron Oil Co. v. Nationwide Mutual Fire Insurance Co., 470 So.2d 810 (Fla. 1st DCA 1985); Keller Industries, Inc. v. Employers Mutual Liability Insurance Co., 429 So.2d 779 (Fla. 3d DCA 1983); Florida Farm Bureau Mutual Insurance Co. v. Rice, 393 So.2d 552 (Fla. 1st DCA 1980), review denied, 399 So.2d 1142 (Fla. 1981). If the allegations of the complaint leave any doubts regarding the duty to defend, the question must be resolved in favor of the insured requiring the insurer to defend. Baron Oil v. Nationwide Mutual, 470 So.2d at 814. Clearly, the question of who eventually was going to pay the judgment against the insured was extrinsic to the question of who had a duty to defend the insured. We find, therefore, that FIGA had a coextensive duty with IGF, as a primary carrier, to defend the insured.

III
FIGA's second argument, that the insured was not harmed by FIGA's failure to defend it because IGF took over the defense and carried it through to settlement, is also wrong. In fact, FIGA's refusal to defend placed the insured in real jeopardy. While IGF assumed the obligation of defending the insured, its policy limits were set at only $150,000. Employer's Reinsurance, the true excess carrier, had policy limits of $5 million, but its coverage began after the first $300,000 was paid. FIGA's refusal to defend left the insured undefended on the balance of the first $300,000, that is, the difference between the end of IGF's policy limits and the beginning of the Employer's Reinsurance coverage. FIGA's refusal to defend also placed at risk any coverage from Employer's since Employer's was a true excess carrier and, under its policy, had no duty to pay until after the first $300,000 was paid by the primary carriers. Thus, FIGA placed the insured in a position of being potentially liable for an immense judgment in a wrongful death action with the only certain indemnification coming from a carrier with policy limits of $150,000.
Given the above possible scenario, it is not surprising that the insured chose to settle with the plaintiff. It was entitled to do so. Florida Physicians Insurance Reciprocal v. Avila, 473 So.2d 756 (Fla. 4th DCA 1985); Steil v. Florida Physicians' Insurance Reciprocal, 448 So.2d 589 (Fla. 2d DCA 1984). FIGA now attacks the settlement on the basis of Fidelity & Casualty Co. v. Cope, 462 So.2d 459 (Fla. 1985), claiming that the provision agreeing not to execute against the insured requires, under Cope, that this cause of action be dismissed because the insured has been released from liability and, therefore, has no cause of action to assign.
FIGA's reliance on Cope is misplaced. In Cope, the injured party, Cope, filed suit *457 against the two tortfeasors and their insurance companies (after the insurers refused to settle) and won a jury verdict for an amount far in excess of the policy limits. Cope then brought an excess judgment action against one of the insurers. The action was settled in return for Cope's execution of a release and satisfaction of judgment in favor of the insurer and both tortfeasors. Cope thereafter filed an excess judgment action against the second insurer for the balance of the judgment awarded by the jury. The Florida Supreme Court held that since the settlement satisfied the judgment against the insured tortfeasor, there was no longer a cause of action upon which to bring a subsequent lawsuit. The court stated:
We hold that if an excess judgment has been satisfied, absent an assignment of that cause of action prior to satisfaction, a third party cannot maintain action for a breach of duty between an insurer and its insured.
Fidelity & Casualty Co. v. Cope, 462 So.2d at 461.
In the case at bar, the insured first assigned all of its rights against FIGA to the injured party. That alone takes this cause out of Cope's purview. Secondly, there has been no satisfaction of the underlying judgment against the insured, and there won't be any such satisfaction until the entire judgment has been paid in full. As a result, until this cause is resolved, the insured has an unsatisfied judgment and an unsatisfied cost judgment recorded against it. Thirdly, this is not a bad faith action against the insurer and there is no excess judgment involved here. We find that Cope does not apply to the instant cause and therefore, Mrs. Giordano, as assignee of the insured, has a cause of action against FIGA.
All other points are without merit.

IV (Cross-Appeal)
We affirm the entry of the final summary judgment on Count II of Mrs. Giordano's complaint. The allegations of this count, though couched in the language of tort and constitutional law, still make out an action for bad faith against FIGA. Under section 631.66, Florida Statutes (1981), however, no action for bad faith lies against FIGA. Fernandez v. Florida Insurance Guaranty Association, 383 So.2d 974 (Fla. 3d DCA 1980). Thus, the trial court was correct in dismissing Count II with prejudice.
We reverse the trial court's ruling on attorney's fees, costs and interest. Attorney's fees may be awarded pursuant to section 631.70, Florida Statutes (1981), when FIGA denies a covered claim by affirmative action. Mrs. Giordano is entitled to recover attorney's fees for the enforcement action she was forced to file after FIGA denied payment of the covered claim. Similarly, she can get lawful interest on the final judgment itself from the date of entry, pursuant to section 55.03, Florida Statutes (1981). Carballo v. Warren Manufacturing Co., 407 So.2d 603 (Fla. 1st DCA 1981), review denied, 415 So.2d 1362 (Fla. 1982); Florida Insurance Guaranty Association v. Gustinger, 390 So.2d 420 (Fla. 3d DCA 1980). Mrs. Giordano, as assignee of the insured, can recover the cost judgment which was entered against the insured after the settlement agreement was reached. Florida Insurance Guaranty Association v. Price, 450 So.2d 596 (Fla.2d DCA), review dismissed, 453 So.2d 1365 (Fla. 1984).
We affirm the final summary judgment entered against FIGA. We affirm the final summary judgment entered on Count II of appellee's complaint. We reverse the trial court's denial of the claim for attorney's fees, costs and interest and we remand for further proceedings on that issue.
Affirmed in part, reversed in part and remanded.
NOTES
[1] During this period, FIGA made three contradictory statements as to its position on whether it would provide coverage: in mid-September FIGA's opinion was that it had no responsibility whatsoever to Rego. Then FIGA took the position that it was an "excess" carrier over IGF's limits and that it would decide what it would do once IGF paid its statutory limits. Finally, by September 30, FIGA had told the plaintiffs' attorney that it would provide $150,000 coverage "excess over IGF". Brief of appellant, pp. 6-7.